2005 WY 33

**Richard S. STEELE, Appellant (Plaintiff),**

v.

**Lee Anne STEELE, Appellee (Defendant).**

No. 04–117.

Supreme Court of Wyoming.

March 24, 2005.

Representing Appellant: Loretta R. Green of Buchhammer & Kehl, P.C., Cheyenne, Wyoming.

Representing Appellee: Pro se.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and BRACKLEY, D.J.

HILL, Chief Justice.

[¶ 1] Appellant, Richard S. Steele (Father), contends that the district court erred in ordering Appellee, Lee Anne Steele (Mother),[1] to pay only the statutory minimum support of $50.00 per month. Father also contends that the district court improperly applied the statutory factors it is required to consider in deviating from the presumptive child support obligation, and that it acted arbitrarily and capriciously in applying "other factors" contemplated by the governing statute. We will affirm.

## ISSUES

[¶ 2] Father posits these issues for our consideration:

I. The district court improperly applied the "minimum" child support obligation as provided for in Wyo. Stat. § 20–2–304(b).

a. [Mother's] income alone was in excess of $732.00 per month.

1. Mother remarried and her name is now Lee Anne Conde.

b.   Twenty-five percent of [Mother's] income far exceeds $50.00 per month.

II.   The district court improperly applied the factors provided within Wyo. Stat. § 20–2–307(b) in granting [Mother] a deviation from her presumptive child support obligation.

a.   The factors listed in § 20–2–307(b)(i–xii) either favor [Father] or are not applicable herein.

III.   The district court acted arbitrarily and capriciously in applying Wyo. Stat. § 20–2–307(b)(xiii).

a.   The disparity in the party's income is adequately and fully addressed in Wyo. Stat. § 20–2–304(a).

b.   The district court improperly weighed the financial efforts and achievements of [Father] with the assistance of his wife and mother.

c.   The district court should have considered the legal obligation and abilities of [Mother] in determining what, if any, deviation was appropriate herein.

Mother did not submit a brief or otherwise appear in this Court.

## FACTS AND PROCEEDINGS

[¶ 3]   By decree entered on July 9, 1993, the parties were divorced.   Under the terms of the decree, as well as the parties' stipulation, Father was designated the primary custodian of the children.[2]   A part of the stipulation was that Mother would pay the presumptive statutory minimum support of $50.00, although the divorce decree provided that she was not required to pay any child support.   The record does not reveal whether Mother, in fact, paid any child support to Father during the ten-year interval between the divorce and the commencement of these proceedings.   At the time of the divorce, Mother was the primary care giver and was not employed.   For purposes of making the child support computation, minimum wage income was attributed to Mother.

[¶ 4]   On December 31, 2002, Mother filed a petition to modify custody, visitation and support in which she asked for primary custody of the children.   It suffices here to note

that Mother based her motion on an allegation that both Father and his new wife imposed overly harsh physical discipline on the children and that the children lived in an overly strict, stressful, and fearful environment.   A guardian ad litem was appointed for the children.   A custody evaluation was accomplished and, although it is not a part of the record on appeal, it is apparent from the record that the evaluator recommended that Father should remain the primary custodian and Mother should have additional visitation.   Father filed a counter-motion on January 17, 2003, in which he asserted that the status quo should be maintained, except that Mother should be required to pay child support.   It is also apparent from the record that no adjustments were made to the parties' child support obligations in the intervening ten years.   Father alleged that, in applying the presumptive child support established by the governing statute, the support amount would change by 20% or more from the amount in the existing order.   Wyo. Stat. Ann. § 20–2–311 (LexisNexis 2003).   Mother took the position that while there were changes in circumstances that counseled in favor of a change of custody, there was not a change in circumstances that counseled in favor of modifying the original decree with respect to child support.

[¶ 5]   On February 25, 2004, the parties filed a "Stipulated Modified Child Custody and Visitation Agreement."   With respect to custody, it provided: "The [parents] agree to maintain joint legal custody with primary residential care, custody and control provided to [Father].   [Mother] shall enjoy liberal secondary parenting rights and responsibilities as the parties herein agree, but no less than those provided in Section 2 herein."   The parties were unable to agree on child support, so that issue was presented to the district court for resolution.

[¶ 6]   A hearing was held on March 16, 2004, to address child support.   The court reporter was not present at the hearing, thus it was not reported and no transcript is available.   With respect to Mother, the record contains three financial affidavits (filed

**2.**   The children were born on May 9, 1990, and   October 18, 1991.

on November 14, 2003, net income $1,271.05; January 26, 2004, net income $569.87; and March 16, 2004, net income $950.00). The record also clearly demonstrates that Father has a substantial income.

[¶ 7] On April 7, 2004, the district court issued a decision letter[3] that contained this summary of the evidence it had before it:

The Court takes into consideration many factors, primarily the disparate financial positions of the parties, but also the questions of what relief was being requested and by what party. Here the Court finds the fees for the guardian ad litem should be paid by [Father]. It appears from the file that such payment is complete in any event. The Court, noting that the guardian ad litem requested the involvement of the custody evaluator and that [Father] utilized his resources to ensure that that was done, will order repayment of one-half of the custody evaluation, $3,000, by each party. [Mother] is to receive credit for $700 paid up through the time of trial, with the remaining $2,300 to be paid at the rate of $100 a month.

The more difficult issue was that of child support. The Court notes that the financial position of [Mother] has not substantially changed in over ten years. The original agreement of the parties was that because of her financial circumstances deviation to $50.00 a month was appropriate. There has been no substantial change of that circumstance other than the most recent job of [Mother] (judging by her affidavit) now pays her somewhat above minimum wage. Even during the pendency of this proceeding, [Mother's] jobs changed, and her affidavit in January indicated $569 of net income, and now indicates approximately $950 of net income. The Court will find that $950 is her net income, and find that [Father's] net income is that indicated only on his affidavit[4] (though there was much discussion about whether that was accurate). However, because of all of the

evidence of the financial circumstances of [Mother], will deviate downward. Once the computation is made it should be included in the order, but should instead reflect a downward deviation to $75 per month. There is, given the history of the case, little reason to believe that it is in the interests of the children to order the presumed child support amount be paid by the mother. Quite the contrary, the Court was nearly persuaded that the agreement of the parties, the $50 minimum, should not be modified at all. This small change in child support, combined with the requirement to pay one-half of the child custody evaluator expenses will inordinately burden [Mother] even at that very low rate, while not appreciably changing the financial circumstances of the father or the children.

[¶ 8] The order from which this appeal is taken was entered on April 27, 2004, and it departs somewhat from the decision letter and provides, in pertinent part, as follows:

THAT the Court finds that there are changes of circumstances such that child support should be modified; however, the court further finds that it is appropriate to deviate from the presumptive child support.

THAT the Court finds that the parties have entered into a fair and equitable stipulation resolving the issues of custody, visitation and health insurance.

IT IS HEREBY ORDERED that [Father] shall be solely responsible for the payment of the fees and costs owed to the guardian ad litem.

IT IS FURTHER ORDERED that the parties shall be equally responsible for the costs of the custody evaluation, with [Mother] to reimburse [Father] for one-half of the amounts he has paid to the custody evaluator with credit for $800.00 previously paid to [Father] during the pendency of this action. The remaining reimbursement of $2,200.00 shall be paid by

---

3. Neither the decision letter, nor the district court's order from which this appeal was taken, was attached to Father's brief. *See* W.R.A.P. 7.01(j).

4. His financial affidavit showed a net income of $1,750.70, though his tax return showed a much higher gross income. However, the later figure was from a joint return with his new wife, as well as income from investments.

[Mother] to [Father] through the Clerk of the District Court in the amount of $25.00 per month beginning on the first day of April, 2004 and continuing on the first of each month thereafter until the total owed [Father] is paid in full. No judgment shall issue at this time.

IT IS FURTHER ORDERED that the Court finds that there has been a substantial change of circumstances such that this Court can modify child support in this case, with reasons to include primarily that [Mother] is employed and has been employed for the great majority of the time since the entry of the Decree of Divorce and that [Father] is financially responsible for several additional dependents. The Court finds that the presumptive child support is $227.00 per month from [Mother] to [Father].

IT IS FURTHER ORDERED that this Court finds that there are reasons to deviate from the presumptive child support in this matter. The principal reasons that the court finds it appropriate to deviate from the presumptive child support include 1) the financial disparity between the parties; 2) the [Father's] overwhelming ability to provide for the financial needs of the children; and 3) that it is in the best interests of the minor children.

IT IS FURTHER ORDERED that child support in this matter shall deviate to the amount of $50.00 per month child support from [Mother] to [Father].

[¶ 9] On April 29, 2004, Father filed a document entitled "Statement of Evidence and Proceeding" that was submitted for the purposes of this appeal pursuant to W.R.A.P. 3.03. That rule provides:

If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be served on appellee, who may serve objections or propose amendments within 15 days after service. The statement and any objections or proposed amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall be included by the clerk of the trial court in the record on appeal.

The document was served on Mother's attorney. By order entered on May 10, 2004, Mother's attorney was permitted to withdraw from her representation of Mother. Mother made no objection to the statement, but the record does not reflect that the trial court settled or approved the statement as required by the rule.

## DISCUSSION

### *Standard of Review*

[¶ 10] The applicable standard of review is well known and we will not repeat it in detail here. *See Ready v. Ready*, 2003 WY 121, ¶ 11, 76 P.3d 836, ¶ 11 (Wyo.2003). However, with respect to the issue at hand we include this refinement of the more general standard:

The child support guidelines identify a base from which the judge must invoke the exercise of discretion. In the absence of an agreement with respect to child support, the guidelines will have a more significant controlling impact. When an agreement as to child support is involved, however, more weight may be given to the agreement. Child support agreements entered into by the parties are favored by the courts.

*Smith v. Smith*, 895 P.2d 37, 41 (Wyo.1995); *also see Sharpe v. Sharpe*, 902 P.2d 210 (Wyo.1995); and *Wright v. Wright*, 5 P.3d 61, 62–63 (Wyo.2000).

[¶ 11] We also have noted "... the child support guidelines manifest a presumption that the typical welfare and needs of children will be met by the minimum child support levels given the earning ability of the parent." *Madison v. Madison*, 859 P.2d 1276, 1279 (Wyo.1993). Further, we have opined:

A trial court should give serious consideration to the support guidelines. However, strictly following the guidelines blindly would nullify the court's traditional discretion and would not be in the interest of justice in all circumstances. The guidelines set out in the statute were not crafted to give any special protection or advantage

to a parent owing support. Guidelines are just that—guidelines, and do not accommodate to all circumstances or cases. As a matter of policy, we are hesitant to impinge on the trial court's historic discretion.

*Holtz v. State ex rel. Houston,* 847 P.2d 972 (Wyo.1993).

■ [¶ 12] The inescapable conclusion, however, is that the presumptive support table set out in Wyo. Stat. Ann. § 20–2–304(a) (LexisNexis 2003) does have the effect of circumscribing the trial court's discretion in calculating child support awards.[5] Wyo. Stat. Ann. § 20–2–307 (LexisNexis 2003) provides, in pertinent part:

(a) The presumptive child support established by W.S. 20–2–304 shall be *rebuttably presumed to be the correct amount of child support* to be awarded in any proceeding to establish or modify temporary or permanent child support amounts. Every order or decree providing for the support of a child shall set forth the presumptive child support amount and shall state whether the order or decree departs from that amount.

(b) *A court may deviate from the presumptive child support established by W.S. 20–2–304 upon a* specific *finding that the application of the presumptive child support would be unjust or inappropriate in that particular case.* In any case where the court has deviated from the presumptive child support, *the reasons therefor shall be specifically set forth fully in the order or decree.* In determining whether to deviate from the presumptive child support established by W.S. 20–2–304, the court shall consider the following factors:

(i) The age of the child;

(ii) The cost of necessary child day care;

(iii) Any special health care and educational needs of the child;

(iv) The responsibility of either parent for the support of other children, whether court ordered or otherwise;

(v) The value of services contributed by either parent;

(vi) Any expenses reasonably related to the mother's pregnancy and confinement for that child, if the parents were never married or if the parents were divorced prior to the birth of the child;

(vii) The cost of transportation of the child to and from visitation;

(viii) The ability of either or both parents to furnish health, dental and vision insurance through employment benefits;

(ix) The amount of time the child spends with each parent;

(x) Any other necessary expenses for the benefit of the child;

(xi) Whether either parent is voluntarily unemployed or underemployed. In such case the child support shall be computed based upon the potential earning capacity (imputed income) of the unemployed or underemployed parent. In making that determination the court shall consider:

(A) Prior employment experience and history;

(B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;

(C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;

(D) Availability of employment for which the parent is qualified;

(E) Prevailing wage rates in the local area;

(F) Special skills or training; and

(G) Whether the parent is realistically able to earn imputed income.

(xii) Whether or not either parent has violated any provision of the divorce decree, including visitation provisions, if deemed relevant by the court; and

**5.** Although the governing statutes remain quite similar to what they were in 1992–93, the statutory directives to the district court have been enlarged upon in the intervening years. Wyo. Stat. Ann. §§ 20–6–301 through 20–6–306 (Michie 1992 Cum.Supp.).

(xiii) Other factors deemed relevant by the court. [Emphasis added.]

[¶ 13] In order to achieve accuracy in calculating support, the district court must ensure that adequate financial information is available to it. To this end, Wyo. Stat. Ann. § 20–2–308 (LexisNexis 2003) provides:

(a) No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received.

(b) Financial affidavits of the parties shall be supported with documentation of both current and past earnings. Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or receipts and expenses if self-employed. Documentation of current earnings shall be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

(c) The court may require, or the parents may agree, to exchange financial and other appropriate information once a year or less often, by regular mail, for the purpose of analyzing the propriety of modification of court ordered child support.

(d) All financial affidavits and records required by law to be attached to the affidavit shall constitute a confidential file and are subject to inspection by persons other than the parties, their attorneys or the department of family services to the extent necessary to enforce the Child Support Enforcement Act and the Uniform Interstate Family Support Act only by court order.

[¶ 14] The system for establishing and enforcing child support orders is part of a federal mandate for a program in which Wyoming is a participant. 42 U.S.C. § 667 (2003); and *see* 3 Arnold H. Rutkin, *Family Law and Practice,* § 33.08[2] (Deviation Under the Federal Mandates) (2004). With respect to the question immediately at hand, Professor Rutkin provides this guidance:

The third approach, the open-ended deviation criteria, provides broadly stated and open-ended grounds for deviating; such as the court's conclusion that the orders pursuant to the guidelines would be unfair, inappropriate, or inequitable. Court's have used this approach when they felt that the guideline amount would result in a "windfall" for the custodial parent and child. Deviation has also been acceptable when the evidence clearly established that the child did not "need" the scheduled amount. The problem with open-ended deviation criteria is that they may allow more judicial discretion than the federal statutes intended, which could create problems for the states. This could also be a problem with specific open-ended criteria such as "the child's best interests," which would allow a court to bypass the presumption of the guidelines intended by the federal statutes.

*Id.* at 33–94–95.

[¶ 15] Wyoming's statute uses some open-ended criteria, i.e., "unjust or inappropriate" for the particular case at hand. However, that is immediately qualified by the requirement that specific findings be made, and that includes any findings pertaining to "other factors deemed relevant by the court."

[¶ 16] Here, the articulated bases for downward deviation fall into the "other factors" category. Some potential criteria for downward deviation are specified in 2 Jeff Atkinson, *Modern Child Custody Practice* (Second Edition), § 11–41 (Checklist: Departure from guidelines) (2004):

Bases for support guidelines:

● unusual custody arrangements, such as split custody or joint custody with the children spending substantial amounts of time with both parents;

● high costs of transportation for visitation (such as if noncustodial parent must pay for interstate travel in order to be with children);

● high income of obligor parent (which, if guidelines were applied, would provide windfall to other parent of funds beyond child's reasonable needs);

- obligor's duties of support to other families, including new spouse and children;

- obligor's support of elderly or disabled relatives;

- obligor's debts (particularly if the debts were incurred during marriage to spouse seeking support);

- obligor's need to channel funds into closely held business (which may provide later increased income for benefit of child for whom support is sought);

- income of spouse of custodial parent;

- property division (e.g., award to custodial parent of income-producing property or marital home with low mortgage payments);

- direct payment by obligor of certain expenses (e.g., mortgage on custodial parent's home, private school tuition, summer camp lessons);

- payment of alimony in addition to child support;

- unfavorable tax consequences to obligor of property and support awards;

- significant income of child (earned or unearned).

### The Record on Appeal

[¶ 17] With the above background in mind, we must also consider the condition of the record on appeal. The hearing or trial portion of this case was not reported and no transcript is available. The statement of the evidence provided by Father was not accomplished in the manner contemplated by the rules. While we do not doubt that it may be accurate in most respects, we will not accept it as a part of the record on appeal because it was not done as required by the governing rule. W.R.A.P. 3.03. We are left then with only the sketchy financial data that is in the confidential file, as well as the thin findings made by the district court. As the proponent of this appeal, it was Father's burden to bring us a complete record for review. *Chancler v. Meredith,* 2004 WY 27, ¶ 5, 86 P.3d 841, ¶ 5 (Wyo.2004).

### Does the Record Support the Trial Court's Decision

[¶ 18] The child support ordered in this case is consistent with the 1993 agreement entered into by the parties. Lacking a complete record, we are compelled to assume the complete record would serve to sustain the district court's findings. The record that is available to us does not serve to clearly demonstrate that the district court abused its discretion or that it acted arbitrarily or capriciously. However, we take note here that its findings were superficial and conclusory in many respects. Nonetheless, we conclude that the district court's order should be affirmed in these circumstances.

### CONCLUSION

[¶ 19] The order of the district court is affirmed.

BRACKLEY, District Judge, dissenting, with whom GOLDEN, Justice, joins.

[¶ 20] I respectfully offer this dissenting viewpoint. In my opinion, this modification order, on its face, fails to comply with statutes and prior case law. The record is more than sufficient to support this holding. Therefore, I would reverse.

[¶ 21] Here, the trial court found that material changes in circumstances warranted a change in previously ordered support. The trial court properly entered net income findings and calculated statutory, presumptive support. Then, the trial court deviated from statutory guidelines and ordered minimum support (significantly lower than the presumptive amount). The record does not contain lawful findings for deviation nor does it contain findings supporting the conclusion that the order was in the best interests of the children. "Financial disparity" between parents and/or one parent's "ability to provide for the financial needs" of children are not reasons to deviate from statutory support. These factors can support a conclusion that a child's best interests are not harmed when there are legitimate reasons to deviate downward from presumptive support.

[¶ 22] Children have the right to share in the financial circumstances of *both* parents.

Neither courts nor parents can circumvent this right. Inadvertently, this decision could jeopardize traditional notions concerning child support law and cause some policy concerns. For example: (1) What tests or standards allow trial courts to say, "The custodial parent makes plenty of money to support the family. So, this order will not require this non-custodial parent to pay as much child support as others in the same income bracket?" and (2) Arguably, the majority decision will make it easier for one parent to tell the other, "If you do not challenge custody, I will not ask the court for statutory support." Stipulated decrees not conforming to law will be presented to, and entered by, uninformed trial judges.

[¶ 23] In support of the foregoing, please review Wyo. Stat. Ann. 20–2–307 (LexisNexis 2003), and the discussion about child support in *Raymond v. Raymond*, 956 P.2d 329, 334 (Wyo.1998) where we said:

A deviation from the guidelines is permitted only when the trial court makes a finding that it would be unjust or inappropriate to follow them in a particular case ***and it specifically sets forth in full the reasons therefor[.]*** [Emphasis added.]