2009 WY 51

**Walker Patterson INMAN, Jr.,**
**Appellant (Plaintiff),**

v.

**Daisha Loraine WILLIAMS, f/k/a Daisha**
**Loraine Inman, Appellee (Defendant).**

No. S–08–0113.

Supreme Court of Wyoming.

April 9, 2009.

Representing Appellant: John D. Bowers and Joshua T. Smith of Bowers Law Firm, P.C., Afton, Wyoming.

Representing Appellee: William L. Combs of Combs Law Office, LLC, Evanston, Wyoming.

Before GOLDEN and HILL, JJ., and KAUTZ, DONNELL, and PERRY, DJJ.

HILL, Justice.

[¶1] Appellant, Walker P. Inman, Jr. (Father), appeals from a district court order which settled several matters that were in dispute between Father and Daisha Loraine Williams (fka Inman) (hereafter Mother). We will affirm the district court's order.

## ISSUES

[¶2] Father raises these issues:

I. Did the district court abuse its discretion when it entered an order restricting [Father's] rights in caring for his children not supported by the evidence and/or a violation of his fundamental rights to associate [with] and raise his children?

II. Did the district court abuse its discretion in ordering [Father] to post a bond in the amount of $50,000.00 in the event he moves to South Carolina?

III. Did the district court abuse its discretion and violate [Father's] fundamental constitutional right concerning the care, custody and control of his minor children when it precluded him from selecting a counselor of his own choosing for the minor children?

IV. Did the district court err as a matter of law when it stated that under certain conditions, it would "reopen" [Mother's] petition to modify custody?

V. Did the district court abuse its discretion in ordering [Father] to pay [Mother] a *per diem* when she exercises her visitation?

VI. Did the district court err as a matter of law by permitting the guardian ad litem to indirectly testify?

VII. Did the court abuse its discretion in finding that visitation was in the best interests of the child[ren] when the evidence did not support such a finding?

VIII. Did the district court err as a matter of law in not ordering [Mother] to pay child support?

IX. Did the district court abuse its discretion in conditioning custodial rights upon the conduct of the non-custodial parent?

Mother addresses the issues raised by Father somewhat superficially and posits these contentions:

I. The order issued on December 10, 2007, is not an appealable order.

II. Sanctions are appropriate, and should be awarded, for [Father's] pursuit of this appeal.

III. Even if found appealable, [Father's] arguments are so devoid of merit as to warrant dismissal or affirmance.

In his reply brief, Father asserts that the instant appeal is from an appealable order, that there is no basis for sanctions, and that his arguments have merit.

## FACTS AND PROCEEDINGS

[¶ 3] We have reviewed this matter on a previous occasion, and it is necessary to consult that opinion for a summary of the facts and circumstances that have led up to this juncture in the proceedings. *Inman v. Williams*, 2008 WY 81, ¶¶ 3–9, 187 P.3d 868, 869–74 (Wyo.2008) (*Inman I* ).[1] Although we dismissed that appeal because the order from which the appeal was taken was not an appealable order, we made some specific findings that are pertinent to this appeal and, under our supervisory authority, we issued directives to the lower court:

> After careful consideration of the parties' respective contentions, we find that Mother's arguments are more persuasive. We hold the order in question is not an appealable order under W.R.A.P. 1.05(b). The true thrust of the court's order is to provide therapeutic counseling to the parties' children so that eventually Mother's long-delayed visitation with her children can be determined and established. *Until the children's therapeutic counseling has reached the point at which Mother's visita-*

*tion can be determined and established, the terms of that visitation have not been fixed. Because the order does not hold Father in contempt and does not fix the terms of Mother's visitation, the order does not determine the action.*

> Although the order contains language that the children's therapeutic counselor, in consultation with the guardian ad litem, shall determine the terms of Mother's visitation when the children have been prepared for that visitation, *in the exercise of this Court's supervisory authority, we direct the therapeutic counselor and the guardian ad litem to recommend such terms to the district court and that court shall establish, with all deliberate speed, the appropriate terms of visitation as provided by statute.* [Emphasis added.]

*Id.*, ¶¶ 17–18, 187 P.3d at 876.

[¶ 4] It suffices here to note that the problems between the parties with respect to child visitation have still not been fully resolved. The instant proceedings were initiated by Father's petition to relocate his primary residence and that of the children to South Carolina. Mother objected to that petition and set out in detail the enormous and continuing problems she has had obtaining her court-ordered rights to visitation with the children, during times when both parties and the children were residing within miles of one another in Wyoming.

[¶ 5] The district court held a hearing on September 26, 2007, to address the petition to relocate, as well as to address other matters which the parties had been unable to resolve over the preceding seven years. On December 10, 2007, the district court issued this order:

> out of Lincoln County without permission from the guardian ad litem restricted his constitutional right to travel. Mother had expressed a concern that Father might "abscond" with the children, depriving her of any contact whatsoever. We denied that petition. On April 1, 2008, Father appealed the district court's order denying his motion to set aside, alter, or amend the district court's December 5, 2007 order, which is on appeal herein. After we published our opinion in *Inman I*, Father voluntarily dismissed that appeal (S–08–0114).

---

1. We note here that other matters relating to this case have been called to our attention. An appeal was filed by Mother in 2000 (Case No. 00–315). That appeal was dismissed by agreement of the parties. In 2006, Father filed a Petition for Writ of Review (Case No. 06–120). In that Petition, Father challenged several of the district court's discretionary rulings with respect to the ongoing visitation dilemma, as well as the parties' disputes over court-ordered counseling. Father also asserted that the district court's order to the effect that he could not take the children

1. That this Court has jurisdiction of the parties and the subject matter of this action.

2. A Decree of Divorce was entered on August 29, 2000, in the Eighth Judicial District Court which incorporated the Parties' Property Settlement and Child Custody and Visitation Agreement. [Father] was granted primary care and custody of the parties' two minor children, subject to [Mother] having visitation pursuant to the provisions set forth in the Recommendations of the Guardian ad Litem for [the children], dated July 12, 2000.

3. On June 25, 2001, a Stipulated Order Modifying Visitation Provisions of Decree of Divorce was entered wherein [Mother's] visitation was modified and set forth in great detail. However, in essence all visitation was to occur in the presence of, and with the assistance of, a Qualified Care Provider; further, visitation was altered to occur every Saturday from 10:00 am until 4:00 pm, alternating holidays from 10:00 am until 6:00 pm, telephone visitation every Monday, Wednesday and Friday from 6:00 pm until 6:20 pm.

4. The Court file reflects numerous filings thereafter concerning visitation and the lack thereof.

5. [Father] filed Notice of Intent to Relocate pursuant to the Court's January 2, 2007, order. [Mother] objected to the relocation and filed for temporary custody of the children.

6. The Wyoming and the United States Constitutions provide parents with a constitutional right to travel, including the right to relocate. The Wyoming Supreme Court, citing *Love v. Love,* 851 P.2d 1283 (Wyo.1993), held in *Watt v. Watt,* 971 P.2d 608 (Wyo.1999), that courts must consider whether a relocating parent's motives for proposing the move are legitimate, sincere, in good faith, and whether reasonable visitation is possible for the remaining parent. The Court reiterated this principle in *Resor v. Resor,* 987 P.2d 146 (Wyo.1999), stating that the right to travel should not be denied, impaired, or disparaged unless clear evidence demonstrates an additional, substantial, and material change of circumstances and the detrimental effect the move would have on the children.

7. This Court is satisfied that legitimate good faith motives exist for [Father's] proposed move to South Carolina. However, the Court is concerned with establishing and maintaining reasonable visitation for [Mother who is] remaining in Wyoming.

8. [Mother] has failed to show a material and substantial change of circumstances warranting a change of primary custody at this time.

9. The Court finds that the course of pre-visitation counseling previously ordered by the Court, which was intended to prepare and facilitate the (re)establishment of visitation between the parties' minor children and [Mother] has not been effective, and in fact has had the opposite effect.

10. The Court finds that [Father] has been less than diligent in making the children available for counseling, and in some instances has actively discouraged the children from participating, and in general his relationship with the counselor selected by the Court to provide services has caused the counselor to terminate the relationship.

11. At the same time, [Mother's] lifestyle and relationships, particularly with Randy Williams, raise legitimate concerns about her judgment and commitment to a relationship with her children.

12. The Court finds that it is in the children's best interest that some contact occur and reasonable visitation be established between [Mother] and her minor children immediately and prior to [Father's] relocation to South Carolina.

13. In the absence of some reasonable degree of visitation prior to [Father's] proposed relocation to South Carolina it is extremely doubtful that [Mother] will have the opportunity to exercise visitation which would not be in the best interests of the minor children.

14. The Court finds that even if some degree of visitation takes place prior to [Father's] relocation and is successful that after the [Father] relocates, [Mother] will be, because of the parties' relative financial

positions [2] and the previous history of this relationship, at a clear disadvantage in pursuing and enforcing her right to visitation with her children.

IT IS HEREBY CONSIDERED, ORDERED ADJUDGED AND DECREED as follows:

1. [Father] shall make the parties' minor children immediately available for visitation with their [Mother] ... beginning no later than January 1, 2008.

2. Said visitation shall be supervised by persons and at a location approved by the Guardian ad Litem. In the absence of substantial and compelling evidence that the same is not in the children's best interest the visitation shall consist of the following minimum periods, to commence forthwith:

A). One hour per week for a period of two weeks;

B). Two hours per week for a period of two weeks; and

C). One afternoon (4 hours) per week for a period of four weeks.

3. Upon completion of this initial period of visitation, which has as its goal and purpose to establish reasonable contact between Mother and her children, the Court will reconsider [Father's] request to relocate to South Carolina.

4. In the absence of some relationship between [Mother] and her children, and in the absence of [Father's] cooperation in establishing the same as set forth above, the Court will reopen and consider the application by [Mother] for a change of custody.

5. Upon completion of the initial period of visitation, and prior to the relocation to South Carolina, [Father] shall post a cash bond with the Clerk of the District Court in the amount of $50,000.00 to allow [Mother] to continue to exercise visitation in South Carolina and to enforce this and other Court orders concerning visitation as the case may be.

6. In the event [Father] relocates to South Carolina, [Mother] shall be entitled to the following periods of visitation:

A). One weekend per month;

B). Alternating Holidays;

C). Four (4) weeks during the summer.

In addition [Father] shall be entitled, and [Mother] shall make children available for reasonable and regular phone contact.

7. [Father] shall pay the following amounts incurred by [Mother] in exercising visitation in South Carolina:

A). Travel to and from the location of the minor children, including but not limited to, coach round trip airfare; and

B). Per diem of $200 per day.

## DISCUSSION

**Is the Order at Issue an Appealable Order**

[¶ 6] In our 2007 decision regarding this case, we determined that the order from which the appeal was taken was not an appealable order, although we did provide some minimal guidance to the district court and parties for the additional proceedings that appeared both inevitable and necessary to bringing finality to this case. *Inman I*, ¶¶ 10–17, 187 P.3d 868 at 874–76. Mother contends that this appeal is likewise not taken from an appealable order. She also contends that sanctions should be awarded in her favor because the appeal is faulty and that Father's contentions are so devoid of merit that this Court should summarily dismiss or affirm the order from which the appeal was taken.

[¶ 7] We have established the standards we apply to determine if an order, such as that in dispute here, is an appealable order. We will apply those same standards to determine whether or not the appeal in this case is from an appealable order:

1.05. **Appealable order defined.**

An appealable order is:

(a) An order affecting a substantial right in an action, when such order, in

---

**2.** The record reflects that Father's income exceeds $1,000,000.00 a year. The record also demonstrates that the children are wealthy in their own right, being the beneficiaries of a trust that Father estimated would be valued at one billion dollars by the time they reach age 21.

effect, determines the action and prevents a judgment; or

(b) An order affecting a substantial right made in a special proceeding; or

(c) An order made upon a summary application in an action after judgment; or

(d) An order, including a conditional order, granting a new trial on the grounds stated in Rule 59(a)(4) and (5), Wyo.R.Civ. P.; if an appeal is taken from such an order, the judgment shall remain final and in effect for the purposes of appeal by another party; or

(e) Interlocutory orders and decrees of the district courts which:

(1) Grant, continue, or modify injunctions, or dissolve injunctions, or refuse to dissolve or modify injunctions; or

(2) Appoint receivers, or issue orders to wind up receiverships, or to take steps to accomplish the purposes thereof, such as directing sales or other disposition of property.

(See Rule 13 for additional guidance on review of interlocutory orders.) [Emphasis added.]

This rule was amended by order adopted on April 23, 1992, and at that time we commented that: "The number of this rule did not change, but the language was adjusted **significantly** to refine and clarify what an **appealable order** is, whether it be a final or interlocutory order [Emphasis added]." See comment to Rule 1.05 at 823–32 P.2d, Wyo. Rptr. LII (1992). We conclude that what was intended by the amendment of that rule was that we would no longer look at just whether an order was "final." Rather the limitation on our review would be directed to whether an order was "appealable" as defined by Rule 1.05. In this particular case we conclude that the instant order was made in a "special proceeding." See *In re WJH*, 2001 WY 54, ¶ 10, 24 P.3d 1147, 1151–52 (Wyo. 2001), where we held:

In general terms, special proceedings are those which were not actions in law or suits in equity under common law and which may be commenced by motion or petition upon notice for the purpose of obtaining relief of a special or distinct type. *State in Interest of C.*, 638 P.2d 165, 168 (Wyo.1981). They result from a right conferred by law together with authorization of a special application to the courts to enforce the right. *Id.* This court has recognized that, even in cases involving delinquency, proceedings under the Juvenile Court Act could be in lieu of proceedings under the general criminal procedure. *Id.*

Although some authorities set out the expanded meaning of "special proceeding" in great detail, perhaps the Supreme Court of Oklahoma put it most clearly and succinctly in these terms: " 'Special proceedings' is a term used to distinguish litigation that is not governed by the general regime of pleadings.'... They are distinguished from other civil actions by the manner of pleading, practice and procedure prescribed by law." *Barber v. Barber*, 2003 OK 52, ¶ 6, 77 P.3d 576, 579 (Okla.2003); also see 39B Words and Phrases, "Special Proceeding" 416–447 (2006); 1A C.J.S. Actions § 115 (2005). We are satisfied that the instant case involves a special proceeding as contemplated by W.R.A.P. 1.05. The more rigorous limitation of Rule 1.05 is probably the requirement that the order affect a "substantial right." Here we need not tarry long because we have repeatedly held that, " '[t]he right to associate with one's immediate family is a fundamental liberty protected by the state and federal constitutions.' ... Resolution of which parent shall have custody necessarily implicates the fundamental right of family association." *Loghry v. Loghry*, 920 P.2d 664, 667 (Wyo.1996).

*FML v. TW*, 2007 WY 73, ¶¶ 5–6, 157 P.3d 455, 458–59 (Wyo.2007).

[¶ 8] Although Mother's contentions are not without some basis, we discern an important distinction between the circumstances of the appeal in *Inman I* and the circumstances we are presented with here. That distinction is that, *inter alia*, the district court did establish a concrete visitation schedule and delayed, but did not deny, Father's ability to relocate to South Carolina. In *Inman I* we recognized that the proceedings at issue are indisputably "special proceedings" as con-

templated by W.R.A.P. 1.05. However, in that case we did not discern a "substantial right" that was at issue. We are now more than two years further down the pike since the order that was the subject of the appeal in *Inman I* was issued, and it does not appear that the disputes between these parties, both the petty ones and those of great consequence, are any closer to meaningful resolution. In saying this, we do not intend to create a precedent which suggests that by merely being obdurate for a long enough period of time a party may elevate an "insubstantial right" to a "substantial one." However, here it readily appears that Father has succeeded in side-stepping the obligations imposed upon him by the district court to give recognition to the district court's decisions concerning court-ordered visitation for Mother. Moreover, his proposal to move the children to a distant location, which could well have the effect of further frustrating Mother's rights to visitation, directly impacts her substantial rights in that regard. By the same token, although he has flouted court orders time and time again, Father cannot be denied his constitutional right to relocate as recognized under Wyoming law and legal precedent of the United States Supreme Court. For these reasons, and we hope they will remain *sui generis* to these parties, we conclude that the order from which this appeal was taken is an appealable final order as contemplated by W.R.A.P. 1.05.

**Did the District Court Abuse its Discretion or Err as a Matter of Law**

[¶ 9] Our standard of review is well known:

> We review a district court's order on a petition to modify custody, visitation, and child support for an abuse of discretion. *Selvey v. Selvey*, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo.2004).

> We will not interfere with the district court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion. In determining whether the district court has abused its discretion, we must decide whether it could reasonably conclude as it did. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Id.* (internal citations and quotation marks omitted).

*Gray v. Pavey*, 2007 WY 84, ¶ 8, 158 P.3d 667, 668 (Wyo.2007).

[¶ 10] We will briefly note our agreement with Father's contention that "no person shall be deprived of life, liberty, or property without due process of law." However, in the same breath, we will conclude that the record on appeal demonstrates beyond a shadow of a doubt that Father has received more than his fair share of due process of law, while at the same time trying to frustrate Mother's access to that same fundamental constitutional right. The record will not support a conclusion that Father has been deprived of due process of law at any stage of these protracted proceedings. Likewise, we agree fully with Father's contention that our jurisprudence holds in the highest regard the fundamental constitutional right of parents to raise and associate with their children. The record on appeal reflects that Father's rights in that regard have never been negatively affected by the actions of Wyoming courts—although the same cannot be said for Mother's correlative rights.

[¶ 11] Although a change of residence to another state by Father is the issue that set these particular proceedings in motion, the focus of our attention is the reinstatement of Mother's longstanding, but unenforced rights to visitation and, further, a modification of those longstanding visitation rights so as to ensure and facilitate Mother's visitation rights in light of Father's desire to relocate to South Carolina. See generally *Watt v. Watt*, 971 P.2d 608 (Wyo.1999).

[¶ 12] Father's brief addresses the issues summarized in his statement of the issues in a different order than that set out above. We will conform our discussion of the issues to the order in which they appear in his brief.

[¶ 13] First, Father contends that the district court erred in ordering him to

post a $50,000.00 bond if he chooses to move to South Carolina. We have addressed this issue on other occasions:

> Finally, Father argues that his right to visit his children effectively has been negated by the district court's requirement that he post a $50,000.00 bond as a condition to exercising visitation. He asserts that although in the past he has been well employed, he is now deeply in debt as a result of the divorce, and that he will not be in a position to post a bond every time he wants to see his children. He claims that to impose this monetary condition is "quite simply unfair, onerous, punitive, and not sustainable."
>
> A bond-posting requirement, used to ensure compliance with a decree in visitation and custody cases, is within the discretion of the district court and finds support in the law. *See Beard v. Beard,* 368 P.2d 953, 954 (Wyo.1962) (court had right to add to the order that a bond be furnished if children removed from the state); *Leitner [v. Lonabaugh],* 402 P.2d [713] at 716 [(Wyo. 1965)] (order requiring mother to post bond to assure performance of her obligations under the decree was valid and enforceable); *Matter of Marriage of Miller,* 600 S.W.2d 386, 388 (Tex.Civ.App.1980) (court upheld order requiring that father post a $5,000.00 bond before taking the children for a two week annual visitation); and 27C C.J.S. Divorce § 634 at 207 (1986 & 2002 Cum.Supp.). Where there is evidence that the non-custodial parent may fail to return the child, a court does not abuse its discretion by requiring a bond as a condition to visitation. *See generally Grimditch v. Grimditch,* 71 Ariz. 237, 226 P.2d 142, 142 (1951) (court struck down bond where there was nothing in the record to indicate that the father would violate a judgment of the court) and *Bienvenu v. Bienvenu,* 380 So.2d 1164, 1166 (Fla.App.1980). A bond must not be penal, but rather remedial in nature, and must have some relationship to the expense that the other party may incur in enforcing the decree to which the bond relates. *See Metz v. Metz,* 108 So.2d 512, 514 (Fla.App. 1959). Determination of the proper amount of a bond is within the discretion of the district court, and "the amount should neither be so large that the noncustodial parent is unable to provide the bond, nor so small that it will not ensure compliance with its limitations." *McCullough v. Hudspeth,* 120 R.I. 598, 389 A.2d 1242, 1245 n. 4 (1978).

*Stonham v. Widiastuti,* 2003 WY 157, ¶¶ 27–28, 79 P.3d 1188, 1197 (Wyo.2003). The record on appeal is well-seasoned with behaviors on Father's part that warrant the imposition of the bond in this case, and the district court did not abuse its discretion in imposing the bond more fully described above.

[¶ 14] Second, Father contends that the district court violated his fundamental rights by negating his selection of a counselor for the children. This matter arose largely because the parents were unable to agree on the choice of a counselor and, because of that, the decision was assigned to the guardian ad litem. For the most part, this contention is not supported by either pertinent authority or cogent argument. Furthermore, it is not supported by the record as a whole. If, indeed, Father was denied the right to choose a counselor in his sole discretion (in his role as the parent with primary if not virtually exclusive custody), that was the result of his refusal to participate cooperatively in the proceedings as they were conducted by the district court. Upon an examination of the record for this appeal, as well as of our prior opinion in this case, and the papers associated with its prior appearances here wherein no opinion was generated by this Court, we are compelled to conclude that the district court did not abuse its discretion or err as matter of law in overseeing the selection of a counselor or counselors.

[¶ 15] Third, Father contends that the district court erred as a matter of law when it ordered the potential re-opening of Mother's petition to modify custody in the event Father continued to flout orders of the district court. We conclude that this contention does not pose an issue that makes it incumbent upon this Court to provide the relief Father requests. A district court has continuing jurisdiction in matters such as this. Wyo. Stat. Ann. § 20–2–203 (Lexis-

Nexis 2007). Although Father has viewed this as a "threat" that exceeds the jurisdiction of the district court in these circumstances, we are more inclined to view it as a "warning" that Father's continued recalcitrance could undermine the district court's initial determination that Father's intent to relocate was "properly motivated" and "sincere." As we said in *Love v. Love*, 851 P.2d 1283 at 1287–88 (Wyo.1993):

> Cases involving relocation of parents are fact sensitive; we would be remiss to attempt to define a bright line test for their determination. Where the issue is relocation of one of the parties, we must remember that the best interests of the child standard was applied at the time of the initial custody award. Therefore, our review looks more closely at balancing the continued rights of the parties with the best interests of the children as established at the time of divorce. We will consider the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement. We will consider also whether the relocating parent's motives for proposing the move are legitimate, sincere, in good faith, and whether reasonable visitation is possible for the remaining parent. *See, Arquilla* [*v. Arquilla*, 85 Ill.App.3d 1090, 41 Ill.Dec. 450] 407 N.E.2d [948] at 950 [(1980)]; *Holder v. Polanski*, 111 N.J. 344, 544 A.2d 852, 855 (1988).

Also see *Morris v. Morris*, 2007 WY 174, ¶ 18, 170 P.3d 86, 92 (Wyo.2007); *Testerman v. Testerman*, 2008 WY 112, ¶¶ 16–20, 193 P.3d 1141, 1146–47 (Wyo.2008).

■ [¶ 16] Fourth, Father contends that the district court abused its discretion in requiring him to pay Mother a per diem when visiting the children. The language used by the legislature in Wyo. Stat. Ann. § 20-2-202(a)(ii) (LexisNexis 2007) is very general:

> (a) The court may order visitation it deems in the best interests of each child and the court shall:

> (i) Order visitation in enough detail to promote understanding and compliance;

> (ii) Provide for the allocation of the costs of transporting each child for purposes of visitation;

> (iii) Require either parent who plans to change their home city or state of residence, to give written notice thirty (30) days prior to the move, both to the other parent and to the clerk of district court stating the date and destination of the move.

[¶ 17] We have not had occasion to directly address a question like this before. However, in *Durham v. Durham*, 2003 WY 95, ¶¶ 5, 21, 74 P.3d 1230, 1232–33, 1236 (Wyo. 2003), we intimated that the district court's direction that mother pay the "reasonable and necessary expenses" for visitation was likely within the district court's broad discretion with respect to visitation. Father relies on the case *In Re Marriage of Elmer*, 936 P.2d 617, 622–23 (Colo.App.1997) in support of this issue:

> Next, the husband argues that the trial court erred in obligating him to pay all of the child's transportation costs. He also argues that the court had no authority to order him to bear a substantial portion of the wife's transportation costs when she travels with the child to the husband's residence in Minnesota. We agree.

> Section 14–10–115(13)(a)(II), C.R.S. (1996 Cum.Supp.) provides that reasonable and necessary transportation expenses for the *child* are to be divided between the parents in proportion to their adjusted gross incomes. *See In re Marriage of Andersen*, 895 P.2d 1161 (Colo.App.1995); *In re Marriage of Hoffman*, 878 P.2d 103 (Colo.App.1994).

> The child support guideline does not provide for allocation between the parties of a *parent's* travel expenses. However, in some circumstances, it might be appropriate for the trial court to deviate from the presumptive amount of support to account for a parent's extraordinary travel expenses, if the trial court makes the necessary specific factual findings. *In re Marriage of Hoffman, supra; see also In re Marriage of Kluver*, 771 P.2d 34 (Colo. App.1989).

Here, the portion of the order that the husband pay for all of the child's transportation expenses for each of the Minnesota visits improperly allocates all of the child's transportation expenses to the husband instead of proportionately allocating them between the parties, with no finding as to why such is an appropriate allocation. Further, there is no authority for the court to order the husband to pay any of the wife's travel or per diem expenses, and neither the evidence nor the findings support the theory that the court intended to deviate from the guideline when it ordered each party to pay a portion of the other's own transportation or per diem costs.

Those portions of the order that require either party to pay any of the other's transportation or per diem costs, that obligate the husband to pay all of the child's transportation costs to Minnesota, and that require the consent of the psychiatrist for overnight parenting time are reversed, and the cause is remanded for reallocation of the child's transportation costs between the parties in proportion to their respective incomes and for review regarding whether any further restriction of parenting time is appropriate under § 14–10–129. In all other respects, the order is affirmed.

[¶ 18] That case is instructive in addressing the issue we face here, but the Colorado law is different enough from ours so that we do not find it persuasive in these circumstances. We are more inclined to embrace a principle established in Nebraska law to this effect: There is no immutable standard for the allocation of travel expenses for the purpose of visitation; instead the determination of reasonableness is made on a case-by-case basis. *Maranville v. Dworak,* 17 Neb.App. 245, 758 N.W.2d 70, 85 (2008); also see *Dring v. Dring,* 87 Hawai'i 369, 956 P.2d 1301, 1309 (App.1998) (court may order custodial parent to pay all or a part of interstate transportation expenses). After examining the very general language of the governing Wyoming statute and examining the views that have been expressed by appellate courts of other states, we conclude that the district court did not abuse its discretion in directing Father to pay Mother a per diem when she is exercising her visitation in South Carolina.

[¶ 19] Fifth, Father contends that the district court erred as a matter of law in permitting the guardian ad litem to indirectly testify at the September 26, 2007 hearing. Of necessity, the guardian ad litem's role in this case was unusually comprehensive and far reaching. We have carefully examined the guardian ad litem's participation in the hearing at issue and we conclude that, given the broad ranging responsibilities assigned to the guardian ad litem in this case, her participation in these proceedings did not undermine in any way the validity of the district court's order. See generally *In Re "H" Children,* 2003 WY 155, ¶¶ 26–33, 79 P.3d 997, 1004–7 (Wyo.2003).

[¶ 20] Sixth, father contends that the district court erred in finding that visitation was in the best interests of the children when the evidence did not support such a finding. We have reviewed the record with particular care with respect to this issue, and we conclude that the district court's determination is supported by the record, and the visitation provisions of the disputed order are well within the district court's broad discretion in such matters. See generally *Basolo v. Basolo,* 907 P.2d 348, 353–55 (Wyo.1995).

[¶ 21] Seventh, Father contends the district court erred as a matter of law in not requiring Mother to pay child support. The parties stipulated in the year 2000, that neither party was to pay the other any child support. That stipulation remains in full force and effect. Although we are cautious in applying our oft-stated principles that where an agreement exists as to child support, more weight may be given to the agreement, as well as that child support agreements are favored by the courts, in this instance we find those principles to be determinative. See *Steele v. Steele,* 2005 WY 33, ¶ 10, 108 P.3d 844, 848 (Wyo.2005). The dissent in the *Steele* case captures the concerns this Court has expressed in recent years about deviations that are not supported by explicit findings of the trial court, and especially deviations that make no requirement whatsoever of a parent to provide financial support. *Id.* ¶¶ 20–23, 108 P.3d at 851–52. In this instance, as was the case in

*Steele,* we have before us only a partial record of the proceedings to date (only those directly related to Father's motion to relocate to South Carolina). Thus, the record before us is silent as to what consideration the district court has given this matter in earlier proceedings. Moreover, from the record on appeal before us, it does not appear that Father genuinely raised or pursued this issue in the proceedings now under review. For these reasons, we view Father's concerns about child support to be spurious, and we decline to consider them herein. If Father is sincere in his concerns about child support, he may raise that issue upon remand.

■ [¶ 22] Finally, we must address Mother's request that we impose sanctions, as provided for in W.R.A.P. 10.05, against Father for having pursued this appeal. We have determined that the order from which the appeal was taken was an appealable order. In the same breath, we must also acknowledge that the appeal appears to demonstrate once again Father's dogged determination to oppose any visitation for Mother, while at the same time championing *his* fundamental rights to associate with the children. Nonetheless we are unable to conclude that Father's brief was so lacking in cogent argument or pertinent authority so as to constitute one of those rare circumstances where sanctions are appropriate. *Aragon v. Aragon,* 2005 WY 5, ¶ 31, 104 P.3d 756, 765 (Wyo.2005).

## CONCLUSION

[¶ 23] None of the provisions of the district court's order constituted an abuse of discretion, nor were any of its provisions invalid as a matter of the law. Therefore, we affirm the district court's orders in all respects and remand to the district court for continued enforcement of all of the district court's current orders.