2002 WY 66

**Stephanie Ann FERGUSSON, Appellant (Plaintiff),**

v.

**Andrew Joseph FERGUSSON, Appellee (Defendant).**

No. 01–139.

Supreme Court of Wyoming.

May 2, 2002.

642

Randall B. Luthi of Luthi & Voyles, Thayne, Wyoming, Representing Appellant.

Kenneth S. Cohen, Jackson, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Pursuant to the parties' divorce decree, Appellant Stephanie Ann Fergusson (the mother) was awarded primary physical custody of the couple's two children. After the mother married a man with three children of his own, Appellee Andrew Joseph Fergusson (the father) observed marked differences in his children's appearance and behavior. At the same time, a rift developed between the mother and her mother, aunt, and grandmother, apparently over their opinions concerning the mother's new marriage and the resulting treatment of her children. The father petitioned to have the custody of the couple's children modified based upon a material change in circumstances. The trial court found the circumstances warranted a change in the custody provisions. We affirm.

## ISSUES

[¶ 2] The mother presents these issues for our review:

I. Did the district court modify custody of the parties' minor children based upon a lack of visitation provided to the grandparent in violation of Wyoming statutory law and the United States Supreme Court's interpretation [of] the Fourteenth Amendment?

II. Did the district court fail to justify a change in custody from the original divorce decree?

The father states the issue as:

I. Are the district court findings (1) that there were material changes in circumstances, and (2) that the best interests of the children required a change in custody from the mother to the father, supported by the record?

## FACTS

[¶ 3] The mother and the father married on April 27, 1994. Two children were born of the marriage. In July of 1999, the couple divorced. The Stipulation and Marital Settlement Agreement filed with the district court provided the parties would share joint legal custody of the children (a daughter born on October 13, 1994, and a son born on February 14, 1996) with the mother having primary physical custody subject to the father's reasonable visitation. A period of relative family harmony ended when the mother remarried. On December 11, 2000, the father alleged changed circumstances and filed a petition to modify the custody provisions of the divorce decree requesting primary custody of the children be given to him. A trial was held on February 27, 2001.

[¶ 4] The father testified that the mother had always been the primary caregiver for the children and had been a good parent. Following the divorce, he and the mother maintained an amiable relationship and were able to effectively manage his visitations with the children. The father resided in Jackson, and the mother resided in Star Valley. The children were happy to visit their father and were equally happy to return to their mother. The otherwise agreeable relationship be-

tween the mother and the father gradually became strained when the mother began dating Dee Aullman (the stepfather), the man she later married. The development of the new relationship coincided with the father recognizing a change in his children for the worse. The mother became pregnant, and the children, who were accustomed to living alone with their mother, now shared a two-bedroom home with their stepfather's three children from a prior marriage. The children expressed anxiety about returning to their mother's home after spending the weekend with their father, and the children stated they did not like their stepfather. The children began wetting their beds, and the father noticed the children's appearance worsened.

[¶ 5] The children's maternal grandmother testified her relationship with the mother began to deteriorate at the same time. She too noticed a progressive change in the children's behavior, and the children told her they did not like their stepfather. The children pleaded to stay with their grandmother or their father rather than having to stay with their mother and stepfather. The daughter told her grandmother about a wrongful touching incident involving her and her older stepbrother. The incident was reported to the Department of Family Services, and no further action was taken. The grandmother testified about another incident when the daughter had red marks on her neck. The daughter stated the mother caught her dragging a cat around the house with a rope. The mother did not approve and put either a belt or a rope around the daughter's neck and dragged her around the house to let her know how the cat felt. The grandmother generally described the children's transformation from being full of life and clean into being sullen, aggressive, afraid, and unkempt. The mother's aunt and grandmother echoed the same concerns at trial and recounted several instances which they feared posed a danger to the children's well-being. The mother's mother, aunt, and grandmother were no longer allowed to see the children except when the children were in their father's custody.

[¶ 6] The daughter's kindergarten teacher testified regarding changes in her personality. The daughter commenced the school year as a happy and polite child but developed signs of aggression and unhappiness. When the teacher asked what was wrong, the daughter stated that her stepfather was mean to her.

[¶ 7] The mother and the stepfather testified the new family was experiencing a transitional period but the children were being raised in a loving and safe atmosphere. The mother believed her family was not supportive of her new relationship, and, consequently, she determined it was in the best interests of her immediate family to curtail visitation with the extended family members. The mother also presented testimony from a Head Start counselor who conducted several home visits, and the counselor testified she saw no indications of abuse or neglect.

[¶ 8] On March 20, 2001, the trial court issued its decision letter granting the father's petition to modify the custody provisions. The mother appealed.

## STANDARD OF REVIEW

[¶ 9] "The party seeking a modification of the custody provisions of a divorce decree has the burden of showing that a material and substantial change of circumstances has occurred, after the entry of the initial decree, and that modification is in the best interests of the children." *Clark v. Alexander*, 953 P.2d 145, 150 (Wyo.1998). This court will not interfere with the trial court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion. *Id.* We recently clarified the definition of an abuse of discretion when we stated the core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998); *see also Pace v. Pace*, 2001 WY 43, ¶ 9, 22 P.3d 861, ¶ 9 (Wyo.2001). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.*

## DISCUSSION

### A. Grandparent Visitation

[¶ 10] The mother claims the trial court improperly considered grandparent visitation in modifying the custody arrangement. She concedes the final order does not require visitation for the maternal grandparent but asserts the trial court's comments and the eventual change of custody "bears the fruit of visitation rights of the grandparent." She points to several instances in the trial transcript where the court expressed a concern that she did not permit the children to visit members of their extended family.

[¶ 11] The mother further contends the trial court failed to follow the mandatory statutory procedures of Wyo. Stat. Ann. § 20–7–101(a) (LexisNexis 2001) which permits grandparent visitation. Section 20–7–101(a) provides in pertinent part:

> (a) A grandparent may bring an original action against any person having custody of the grandparent's minor grandchild to establish reasonable visitation rights to the child. If the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired, the court shall grant reasonable visitation rights to the grandparent.

The mother asserts the trial court did not articulate the rationale for its conclusion that visitation was in the children's best interests and made no determination as to whether visitation would substantially impair the mother's rights.

[¶ 12] Finally, the mother claims the trial court's decision violated the Fourteenth Amendment to the United States Constitution. In *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the United States Supreme Court recognized the Due Process Clause of the Fourteenth Amendment protects parents' fundamental right to make decisions concerning the care, custody, and control of their children. In light of that decision, the mother argues the trial court must find she was an unfit parent; otherwise, "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68–69, 120 S.Ct. 2054. *Troxel*, however, involved grandparents who sued as third-parties seeking visitation with their grandchildren. *Troxel* is distinguishable from the instant case wherein the father, as the other fit parent, filed the petition to modify the custody provisions.

■ [¶ 13] The fundamental fallacy of the mother's argument is, the grandmother did not request visitation rights, either formally or informally. Furthermore, the trial court's order did not provide for grandparent visitation. Therefore, the statute was not at issue, and the Supreme Court's decision in *Troxel* does not apply. It is true the trial court made it patently clear throughout the trial that it was concerned about the mother no longer allowing her children to visit or maintain contact with her extended family. However, it could give appropriate weight to this consideration in determining what was in the children's best interests. Though we are cognizant of the Supreme Court's rationale in *Troxel*, under these circumstances we conclude the mother's argument does not have any merit.

### B. Required Articulation of Factors

[¶ 14] The mother complains the trial court's order and decision letter do not delineate the basis for its decision and are bereft of any support. She argues that, because the trial court did not articulate the factors in support of its decision, on review this court is left with conjecture and speculation in determining whether the custody modification was justified. The father admits the order is not overly detailed but asserts the transcript contains ample statements of the trial court's concerns and evidence it deemed important.

■ [¶ 15] We have repeatedly implored trial courts, when exercising their discretionary power in custody matters, to place the circumstances and factors which were crucial to their custody determinations on the record. If they did so, the reviewing court could better understand and evaluate the soundness of their decisions. *See Produit v.*

*Produit,* 2001 WY 123, ¶¶ 10–13, 35 P.3d 1240, ¶¶ 10–13 (Wyo.2001); *Pace,* 2001 WY 43, ¶ 15, 22 P.3d 861; *Reavis v. Reavis,* 955 P.2d 428, 431–32 (Wyo.1998). We continue to encourage trial courts to rely on their discretionary power to make a record of the critical circumstances and factors which constitute the foundation of a custody award. *Produit,* 2001 WY 123, ¶ 10, 35 P.3d 1240. However, except in instances involving unconventional custody approaches, trial courts are not required to do so. We have placed the onus on the parties to request findings of fact and conclusions of law pursuant to W.R.C.P. 52(a). *Id.; Pace,* 2001 WY 43, ¶ 16, 22 P.3d 861; *RDS v. GEMN (In re MS),* 9 P.3d 984, 986 (Wyo.2000). Neither party made such a request and, therefore, cannot be heard to complain about the absence of formal findings. *Resor v. Resor,* 987 P.2d 146, 148 (Wyo.1999).

[¶ 16] A trial court may modify an order concerning the custody of children if either parent shows a material change in circumstances and the modification would be in the children's best interests pursuant to Wyo. Stat. Ann. § 20–2–201(a) (LexisNexis 2001). Wyo. Stat. Ann. § 20–2–204(c) (LexisNexis 2001). Section 20–2–201(a) became effective July 1, 2000, and sets out the factors the court shall consider in making the proper disposition of children in a divorce. Although not specifically requiring findings as to the various factors, the statute does direct the court to consider specific factors in ordering the disposition of children. *Produit,* 2001 WY 123, ¶ 12, 35 P.3d 1240. "On appeal, this court can ascertain whether the factors have been appropriately weighed only if the district court's consideration is reflected in the proceeding transcripts, by opinion letter, or as findings in the written order." *Id.* Remand may be necessary if the consideration of § 20–2–201(a) factors is not patent in the district court record. *Id.* at ¶ 13.

[¶ 17] We agree the trial court in this instance provided only a scant explanation of its reasoning in the decision letter and order modifying the custody provisions. However, consistent with *Produit,* we may look to the trial transcripts to determine whether the court's considerations are adequately set forth and comply with § 20–2–201(a). Several indications in that transcript prove the trial court was assured that substantial and material changes in circumstances had occurred and it was in the children's best interests for them to live with their father.

[¶ 18] The order states there was a change in circumstances that negatively impacted the children; the children were in an unhealthy and unhappy environment; and, as a result, it was in their best interests to be under their father's care, guidance, and supervision. Each case requires the trial court to carefully weigh the relevant factors while looking to the unique and individual family relationships in reaching a resolution which is in the best interests of the children in that family. *Reavis,* 955 P.2d at 431. In this case, the trial court heard testimony that, upon the mother's remarriage, the children exhibited disturbing changes in both their behavior and their appearance. It is true that remarriage by one of the divorced parents, standing alone, does not constitute a material change in circumstances sufficiently substantial and material to justify a custody modification. *Kreuter v. Kreuter,* 728 P.2d 1129, 1130 (Wyo.1986). However, the addition of what would soon be four other children to the equation in addition to friction with the stepfather can be considered a material change in circumstances sufficient to justify a custody modification. Additional evidence included poor treatment by the stepfather and an improper touching incident between the daughter and her stepbrother. The trial court heard testimony from several witnesses that the daughter became aggressive and sullen, the children repeatedly expressed their dislike for the stepfather, there were several instances of alleged maltreatment, and the children's appearances changed for the worse. The court also heard the stepfather's testimony in which he admitted withholding the children from their relatives was against their best interests. The court said, "I think the kids are unhappy. I think they're sad. I think the situation is unhealthy."

[¶ 19] The court's paramount concern is the children's welfare. *Laughton v. Laughton*, 71 Wyo. 506, 259 P.2d 1093, 1095 (Wyo.1953). The trial court's comments reveal that, due to the material and substantial changes in circumstances, it was in the children's best interests for them to be in their father's custody. We are persuaded the trial court considered the § 20–2–201(a) factors and its considerations are adequately reflected in the record. Therefore, we conclude it is not necessary to remand this case for further findings.

[¶ 20] Affirmed.