2017 WY 118

**Belle Caroline PADEN, k/n/a Belle Caroline Adams, Appellant (Plaintiff),**

v.

**Chad Joseph PADEN, Appellee (Defendant).**

S-17-0077

Supreme Court of Wyoming.

October 4, 2017

Representing Appellant: Matthew R. Sorenson, Daly & Sorenson, LLC, Gillette, Wyoming.

Representing Appellee: DaNece Day, Lubnau Law Office, PC, Gillette, Wyoming.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

FOX, Justice.

[¶1] Belle Caroline Adams (Mother) and Chad Joseph Paden (Father) divorced and, while they both lived in or near Gillette, Wyoming, shared custody of their daughter, PKP. Mother remarried and announced her intent to relocate to southern Colorado. Father petitioned to modify custody, and both parties sought primary physical custody. The district court found that PKP's best interests were served by Father having primary custody. Mother appealed, contending that the district court abused its discretion. We affirm.

## ISSUES

[¶2] We adopt Mother's statement of the issues:

1. Did the district court abuse its discretion when it awarded primary physical custody to Father?

2. Did the district court err in admitting TS's letters into evidence?

### FACTS

[¶3] The parties were married on April 16, 2011. At the time of their marriage, Mother had two children from previous relationships, one of whom, TS, then eight years old, resided with Mother and Father. During their marriage, the couple had one child, PKP, who was born in December of 2011. Mother and Father divorced on May 28, 2014, and, under their stipulated divorce decree, shared custody of PKP. Mother had PKP on the days when Father worked, and Father had her when he was not working. Father works a rotating schedule of eight days on and six days off, which resulted in a nearly even split of PKP's time between Mother and Father. By all accounts this arrangement was successful.

[¶4] Mother married Don Adams in July of 2014. Mr. Adams has a son, RA, from a previous relationship, who resides with him part time. In addition, Mother and Mr. Adams had an infant son. Mother has an inconsistent relationship with her family, including PKP's maternal grandparents, who were not invited to her wedding or to visit her home. Father is the parent who makes sure PKP's maternal and paternal grandparents are included in her life and are invited to events such as birthday parties. Father was PKP's primary caregiver when she was an infant and Mother underwent breast cancer treatment.

[¶5] On October 22, 2014, Mother filed a notice of change of address, announcing her intent to relocate with TS, PKP, her new husband, and their baby to Mr. Adams' childhood home of Pleasant View, Colorado, an eleven-hour drive from Father's home near Gillette. Shortly thereafter, Father filed a petition to modify custody and support. Mother filed a counterclaim, also seeking modification of custody. The district court held a hearing on July 27, 2016, and subsequently modified custody, giving Father primary physical custody, subject to Mother's reasonable visitation. Mother appeals.

### STANDARD OF REVIEW

[¶6] We "review orders modifying custody, visitation and child support for an abuse of discretion ...." *Greer v. Greer*, 2017 WY 35, ¶ 19, 391 P.3d 1127, 1133 (Wyo. 2017) (quoting *Tracy v. Tracy*, 2017 WY 17, ¶ 46, 388 P.3d 1257, 1267 (Wyo. 2017)). Judicial discretion is composed "of many things, among which are conclusions drawn from objective criteria" and "means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Aragon v. Aragon*, 2005 WY 5, ¶ 7, 104 P.3d 756, 759 (Wyo. 2005). We "will not disturb an order regarding custody or visitation so long as the court could reasonably conclude as it did." *Greer*, 2017 WY 35, ¶ 19, 391 P.3d at 1133. "We evaluate the reasonableness of a decision in relation to the evidence presented, viewing it in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party, and ignoring any conflicting evidence." *Id.* (citations omitted).

[¶7] We also review a district court's decision on the admissibility of evidence for an abuse of discretion. *In re Paternity of HLG*, 2016 WY 35, ¶ 7, 368 P.3d 902, 904 (Wyo. 2016). We accord district courts' rulings on the admissibility of evidence considerable deference and will not disturb such rulings on appeal if there is a legitimate basis for the ruling. *Id.* (citing *Wise v. Ludlow*, 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015)); *Aragon*, 2005 WY 5, ¶ 21, 104 P.3d at 762.

### DISCUSSION

**I. Did the district court abuse its discretion when it awarded primary physical custody to Father?**

[¶8] Mother contends that the district court abused its discretion because awarding Father primary physical custody was not in the best interests of PKP. She argues that the district court "erred by not reciting which factor, pursuant to [Wyo. Stat. Ann.] § 20-2-201, it was basing its analysis on," and that the interests of PKP would be best served by Mother having primary physical

custody because Mother is a stay-at-home mom in Colorado, and because PKP will not have to be separated from her siblings if Mother has primary custody. Mother further contends that the district court failed to adequately explain its decision to separate PKP from her siblings.

[¶9] When modification of a custody order is sought, the court engages in a two-step analysis. Generally, "the provisions of a divorce decree, including those pertaining to child custody, are subject to the doctrine of res judicata, which bars litigation of issues that were or could have been determined in a prior proceeding." *Arnott v. Arnott*, 2012 WY 167, ¶ 13, 293 P.3d 440, 444 (Wyo. 2012). However, "application of res judicata to a petition for modification of child custody is not appropriate where there has been a 'material or substantial change in circumstances' with respect to the initial custody determination." *Id.* at ¶ 13, 293 P.3d at 444-45 (internal citation omitted). Thus, the first inquiry requires the court to determine whether there has been "a material change in circumstances since the entry of the order in question . . . ." Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2017). Once such a showing has been made, the court may then consider whether modification would be in the best interests of the children. *Arnott*, 2012 WY 167, ¶ 14, 293 P.3d at 445. The parties and the district court agreed that Mother's move is a substantial and material change of circumstance, which meant they could no longer share custody of PKP as they had been, especially once PKP started school in the fall of 2017. That allowed the district court to revisit custody and visitation. Wyo. Stat. Ann. § 20-2-204(c).

[¶10] Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2017) sets forth the following factors for determining the best interests of a child:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

[¶11] In addition, we have identified other factors that may inform a determination of best interests of a child when modification of a custody order is sought due to a parent's relocation: "the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement, the relocating parent's motives for proposing the move, and whether reasonable visitation is possible for the remaining parent." *Arnott*, 2012 WY 167, ¶ 33, 293 P.3d at 455 (internal quotation marks and citation omitted). "Depending on the case, different factors will present a greater need for emphasis." *Pahl v. Pahl*, 2004 WY 40, ¶ 10, 87 P.3d 1250, 1254 (Wyo. 2004). "The one constant" is that "the resolution must be in the best interests of" the child. *Id.*

[¶12] Mother contends that the district court "erred by not reciting which factor, pursuant to [Wyo. Stat. Ann.] § 20-2-201, it was basing its analysis on." While the district court noted that the parties in this case "stipulated that with the exception of one factor, the factors the Court must consider when determining the best interest of a child resolve themselves with both parents

being equally good," we cannot tell from our review of the record or the court's decision letter and order which factor remained for the court's consideration. But although the district court did not explicitly list the statutory factors it considered, its decision letter sufficiently reveals that it thoroughly reviewed the relevant factors when it examined the evidence and determined modification of custody was in PKP's best interests.[1] "Furthermore, failure to explicitly comment on a statutory factor in the district court's opinion letter or order does not necessarily indicate that the court failed to consider that factor." *Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 10, 167 P.3d 639, 642 (Wyo. 2007).

[¶13] Mother next argues that the district court abused its discretion when it concluded that PKP's interests are best served by Father having primary custody. She asserts that the district court did not give sufficient weight to PKP's relationships with TS or her other siblings, and that the interests of PKP would be best served by Mother having primary physical custody because Mother is to be a stay-at-home mom in Colorado. Mother's argument appears to be a request for this Court to reweigh the evidence differently than the district court, something we may not do. *Greer*, 2017 WY 35, ¶ 22, 391 P.3d at 1133. "Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did." *Kappen v. Kappen*, 2015 WY 3, ¶ 11, 341 P.3d 377, 381 (Wyo. 2015) (citations omitted).

[¶14] As the district court recognized, "the matter at bar presents one of the hardest decisions a jurist is called upon to make; that is, as between two competent and good parents, which of them should be the custodial parent of a child they both love to the depth and breadth of their being." The district court considered the fact that Mother would be a stay-at-home mom in Colorado, and explained that it "decline[d] to afford it much

weight" because it viewed this change as "a momentary snapshot." The court explained the very real possibility that Mother's stay-at-home situation could be short-lived because of Mother's "history of making life changes in a manner that could be described as capricious, with her current situation being no exception," and because "[f]inancial circumstances can change quickly." In addition, the district court noted that because PKP had "but one more year" until she would be school aged, the childcare concerns and benefits that accompany having a parent at home would "all but vanish."

[¶15] The district court examined how PKP had fared under the original custody arrangement: "Father has built a life around raising [PKP] and has done so to an extraordinary level. Father has made a home for [PKP] in Gillette and [PKP] has a reliable extended family in Gillette." The district court considered Father's stability and concluded that he "appears to be the more stable parent." Testimony showed that Father cared for PKP as a baby when Mother had cancer and was unable to provide care, has a steady job with benefits, communicates with PKP daily when she is in her Mother's care, and is the one who makes sure PKP spends time with both paternal and maternal extended family.

[¶16] The district court considered whether reasonable visitation is possible for Father if Mother retained custody, remarking that "Mother has elected to move 11 hours (one way) away to southern Colorado." Father testified that under their current arrangement, PKP spends 44 hours per month in her car seat traveling between Mother's Colorado home and Father's home in Gillette. In addition, if Father were to meet Mother in Craig, Colorado, as mother requested, he would be spending one-third of his custodial time traveling with PKP.

[¶17] The district court heard evidence that Mother has four children with four dif-

---

1. We may look to the order as well as the decision letter to evaluate the district court's reasoning. *See Fergusson v. Fergusson*, 2002 WY 66, ¶ 16, 45 P.3d 641, 646 (Wyo. 2002). We also note that, while there is no record of the proceedings, the parties' Joint Statement of Evidence provides

us with additional evidence upon which we can evaluate the district court's decision. *Id*. at ¶¶ 14-17, 45 P.3d at 645-46 (relying upon trial transcript due to the court's "scant explanation of its reasoning in the decision letter" modifying custody arrangement).

ferent fathers, she married Mr. Adams within four months of first meeting him and within two months of divorcing Father, she has little contact with her parents and PKP's grandparents, and she left her well-paying job at the hospital in. Gillette to move to Colorado. After weighing these factors, the district court concluded that "Father is the parent more likely to act with the best interest of [PKP] in mind, while Mother more often follows her own inclinations and may be more motivated by her own interest."

[¶18] The trial judge is in the best position to assess the credibility of the witnesses and to weigh their testimony. *Aragon*, 2005 WY 5, ¶ 22, 104 P.3d at 762 (citing *Produit v. Produit*, 2001 WY 123, ¶ 22, 35 P.3d 1240, 1246 (Wyo. 2001)). The district court found that "[b]oth parents are good people, and good parents." The district court heard evidence weighing in Mother's favor, and other evidence weighing in Father's favor. It appears from the record that the district court considered all the evidence when making its admittedly difficult decision. Our standard of review requires us to afford the decision of the district court every favorable inference. *Aragon*, 2005 WY 5, ¶ 22, 104 P.3d at 762. We will not disturb an order regarding custody if the district court could reasonably conclude as it did. *Tracy*, 2017 WY 17, ¶ 46, 388 P.3d at 1267. The district court's conclusion that Father ought to be the primary custodial parent of PKP was a reasonable one and does not constitute an abuse of discretion.

[¶19] We next address Mother's contention that the district court did not adequately explain its reasoning for separating PKP from her half and stepsiblings. In *Aragon*, we held that "generally speaking the separating of siblings through custody awards to different parents is not preferred. Keeping siblings together in the same household is considered the better practice." *Aragon*, 2005 WY 5, ¶ 24, 104 P.3d at 763. Further, this "strong public policy toward preservation of sibling relationships [is] equally applicable whether the children are full sibling, half sibling, or stepsiblings." *Id.* at ¶ 26, 104 P.3d at 764. Due to this strong public policy, in split custody situations such as this one, "the trial court must provide an explanation of its reasoning and place its findings on the record." *Produit*, 2001 WY 123, ¶ 11, 35 P.3d at 1243 (citing *Pace v. Pace*, 2001 WY 43, ¶ 17, 22 P.3d 861, 867 (Wyo. 2001)). *See also Aragon*, 2005 WY 5, ¶ 24, 104 P.3d at 763 (instructing "trial courts to be explicit in placing on the record the reasons supporting its determination to separate siblings"). "We have additionally admonished trial counsel that they cannot remain passive and must assist the trial judge in articulating on the record the relevant factors and their relative weight which, in the lawyer's professional judgment, should act as a foundation for the trial court's exercise of judicial discretion." *Id.*

[¶20] Neither party in this case requested written findings. The district court's order contained the following statement regarding its decision to separate PKP from her siblings: "The Court must consider the tenets of *Aragon v. Aragon*, 2005 WY 5, 104 P.3d 756 (Wyo. 2005), but does not find the case dispositive of the matter before the Court given the totality of the evidence." The court's decision letter sheds more light on its rationale:

**Aragon**

Much as the parties have argued, the *Aragon* case must be considered by the court. Mother's family unit now consists of not only her new husband and [PKP], but also her 13-year-old daughter, TS, and 3-month-old son, WA. While *Aragon* must be considered, that case is not dispositive of the matter before the court.

. . . . .

... How is the court to deal with the fact that the minor child, [PKP], now has two half siblings, one 13 and one an infant? [PKP] has a very limited relationship with WA, given his age. Frankly, TS, given her issues, appears to need [PKP] more than [PKP] might need TS. Given the totality of the evidence, that simply is not enough for the court to announce that the *Aragon* factor resolves the issue now at bar. Rather, the court finds that Father is the better custodial parent for [PKP].

[¶21] While these findings are not extensive, they are adequate and, viewed in conjunction with the district court's findings on

the other relevant factors, they provide us with a reasoned explanation for the district court's decision to separate PKP from her siblings and award primary custody to Father. *See Aragon*, 2005 WY 5, ¶ 23, 104 P.3d at 763; *Pace*, 2001 WY 43, ¶ 17, 22 P.3d at 867. The district court evaluated the fact that granting primary physical custody to Father would mean that PKP would have to be separated from her siblings when she is in his care. We will not reweigh the evidence. Moreover, we have "clarified that the effect of separating siblings from each other is just *one* of several factors courts consider in determining the primary issue—the best interests of the children." *Aragon*, 2005 WY 5, ¶ 24, 104 P.3d at 763 (emphasis in original). The district court found that other factors outweighed the fact that PKP would be separated from her siblings while in Father's care. The district court adequately set forth its rationale for separating PKP from her siblings and awarding Father primary custody. We affirm.

## II. Did the district court err in admitting TS's letters into evidence?

[¶22] The district court admitted into evidence two letters written by TS, describing TS's complaints about her relationship with Mother and recounting various instances of conflict. At the hearing, TS testified that, while she recognized the handwriting on the letters as her own, she did not recall writing them, and she testified that statements in them were not true. TS also testified that she has a mood disorder, and that she had been hospitalized and placed in the Y.E.S. House[2] several times to address her behaviors and lying. The district court admitted the letters over Mother's objection. Although she cites no case law, Mother argues that there was not an adequate foundation for the letters and that admitting them "and treating them as an indictment of Mother's parenting ability" was an abuse of discretion.

[¶23] We first evaluate whether there was an adequate foundation for the admission of TS's letters. Wyoming Rule of Evidence 901 sets forth the basic require-

ments of authentication or identification of evidence as a condition precedent to admissibility. The rule states, in part:

(a) *General provisions.*—The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) *Illustrations.*—By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of Witness with Knowledge.—Testimony that a matter is what it is claimed to be;

(2) Nonexpert Opinion on Handwriting.—Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation[.]

W.R.E. 901. "The burden to show authentication is not a heavy one." *Taul v. State*, 862 P.2d 649, 657 (Wyo. 1993). We have held that where a person familiar with the handwriting on a document testifies that the handwriting is genuine, adequate foundation has been laid. *See Foster v. State*, 2010 WY 8, ¶ 9, 224 P.3d 1, 5 (Wyo. 2010) (lieutenant at jail familiar with inmate's handwriting sufficiently authenticated letter); *Epperson v. State*, 600 P.2d 1051, 1053 (Wyo. 1979) (wife's testimony that handwriting on top of receipt is husband's and seller's testimony that signature on the bottom is his was adequate to authenticate document). While we do not have the benefit of a hearing transcript in this case, the parties' Joint Statement of Evidence reveals that TS "recognized her handwriting on the notes Father had in his possession, [but] she did not recall writing notes to Father . . . ." Because TS recognized that the letters were written in her handwriting, we find no reason to conclude that the letters were not sufficiently authenticated.

[¶24] We now turn to the question of whether the district court's admission of those letters was an abuse of discretion. Mother does not articulate an argument sup-

2.  Y.E.S. House is a youth crisis center in Gillette, Wyoming.

porting her contention that admitting the letters "and treating them as an indictment of Mother's parenting ability" was an abuse of discretion. We find that the district court did not abuse its discretion when it admitted the letters for the limited purpose it identified.

[¶25] W.R.E. 402 provides that "All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible." The district court explicitly stated that it did not admit the letters for their content. It explained:

> [T]he court took them not for their content and TS's allegations of abuse and battery by Mother. Rather, the court took them with an eye to the fact that TS's testimony at trial literally evolved depending on the type and nature of questions presented her. As the court expressed at the conclusion of trial, the court chooses to not believe that TS was prevaricating, and that is still the case. Instead, given her history and significant issues, the court views TS as being immature, wanting not to displease Mother, and wanting to have long-term stability with Mother in Colorado that will see TS through to adulthood. Thus, in large part, the court gives her testimony little weight.

The court then went on to explain that it found only one "factor of significance" regarding TS's testimony. The court explained that the fact that TS reached out to Father by writing the letters even after his separation with Mother demonstrated to the court "the quality relationship TS had developed with Father" and "his willingness to continue in that role even when he had no obligation to do so ... speaks highly of Father's efforts to do the right thing, regardless of the circumstances." The letters were not admitted to prove the truth of what TS said, but rather as " 'verbal acts' in the sense that they have legal significance independent of their assertive quality ...." 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:18 (4th ed. June 2017 update). Certainly this was not an "indictment of Mother's parenting abilities" as Mother contends. Our evaluation of the evidence and the rationale of the district court in admitting the letters persuades us that the court's consideration of the letters for the limited purpose of demonstrating Father's parenting efforts and his bond with TS, even after his divorce from TS's mother, was not an abuse of discretion.

### CONCLUSION

[¶26] The district court did not abuse its discretion when it gave primary physical custody of PKP to Father or when it admitted TS's letters as evidence. Affirmed.