# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 25

OCTOBER TERM, A.D. 2019

*February 24, 2020*

NICOLE M. WALSH,

**Appellant**
**(Petitioner),**

**v.**

S-19-0141

DUSTIN C. SMITH,

**Appellee**
**(Respondent).**

*Appeal from the District Court of Park County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
    Bethia D. Kalenak, Bonner Law Firm P.C., Cody, Wyoming.

*Representing Appellee:*
    Sarah N. Miles, Keegan, Krisjansons & Miles, P.C., Cody, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    After Nicole M. Walsh (Mother) moved from Wyoming to Idaho, Dustin C. Smith (Father) petitioned to modify custody, visitation, and support, requesting physical and residential custody of their three-year-old daughter AJW.   Mother counterclaimed to maintain primary physical custody of AJW.   The court temporarily modified Father's visitation schedule pending trial to provide AJW stability in her amount of time with each parent.  The court temporarily modified custody after trial to reduce AJW's monthly travel time pending issuance of its final order.  In its final order, the court concluded that Mother's move constituted a material change in circumstances, and that it was in AJW's best interest for Father to have primary physical and residential custody of AJW after she enters kindergarten.   The court modified visitation and child support accordingly.   Mother appealed, and we affirm.

## *ISSUES*

[¶2]    We rephrase Mother's issues:[1]

> I.  Did the district court abuse its discretion when it temporarily modified custody and visitation after Mother moved to Idaho?
>
> II.  Did the district court abuse its discretion by ignoring material factors deserving significant weight when it permanently modified custody after Mother moved to Idaho?
>
> III. Did the district court abuse its discretion by ordering a visitation plan that is unworkable, is contrary to AJW's best interest, and fails to grow with AJW?

## **FACTS**

[¶3]    Mother and Father met while they were both attending nursing school in Powell, Wyoming.   They were romantically involved but never married.   AJW was born in 2014.  Genetic testing established that Father is AJW's biological father.   Mother and Father

---

[1] Mother designated the trial transcript as part of the appellate record.  The record contains the transcript of the morning portion of the trial in which Mother testified, but not the afternoon portion in which Father and his ex-wife testified.  Mother and Father are aware that there is no transcript of the afternoon portion of the trial, but chose to proceed with this appeal.  The lack of a transcript is not always fatal to an appeal. *Matter of SAJ*, 942 P.2d 407, 409 (Wyo. 1997) (permitting review in the absence of a transcript where the objections filed by appellant sufficiently revealed the facts which supported our ultimate conclusion).  Here, the findings of fact and conclusions of law set forth in the court's decision letter and corresponding order are sufficient for our review.

reached an agreement regarding custody, visitation, and support. In February 2016, the court memorialized their agreement, under which Mother and Father shared legal custody of AJW. The order named Mother as the primary physical, custodial, and residential parent. Father had graduated visitation, culminating in visitation every weekend, with an extended visit every other weekend (amounting to visitation approximately 36% of the time). Both Mother and Father resided in Cody, Wyoming, worked as nurses, and abided by the stipulated order.[2]

[¶4] The present dispute arose in October 2017, when Mother moved to Idaho with AJW and AJW's younger half-brother for an employment opportunity,[3] and Father responded with two petitions regarding custody, visitation, and support. In the first petition, Father argued that Mother's move warranted *permanent* modification of the stipulated order. He contended that AJW's best interest would be served by awarding him physical and residential custody of AJW, with liberal visitation to Mother. Addressing his relationship with AJW and her connections to Park County, he alleged:

> 5. Pursuant to the Stipulated Order on Custody, Visitation and Support, [Father] has a very liberal visitation schedule and has the minor child almost in a shared custody fashion.
>
> 6. [Father] and the minor child have a very close bond. Additionally, the minor child has two (2) half-siblings that she is very close to and has a new half-sister that was recently born to [Father] and his wife.
>
> 7. [Father] has a stable living environment, job, and support system in Park County. He can provide a nurturing environment and stability to the minor child on a day to day basis and has done so for the life of the minor child.
>
> 8. The minor child has resided in Park County, Wyoming for her entire life. She has significant ties to the community, including half-siblings, aunts, grandmother[s], uncles, cousins, and a stepmother. The minor child and [Mother] have no ties to the State of Idaho and know no one there. Based upon information and belief, [Mother] moved there for employment purposes.

---

[2] Mother has a child with her ex-husband. Her ex-husband lives in Clark, Wyoming, and periodically travels to Idaho to visit their son. Father has four children total: AJW, two children from a prior marriage, and one child with his current wife.

[3] Mother left that job in January 2018 and began a job as a registered nurse at another location in Idaho.

9. All individuals with information relating to the minor child reside in Park County, Wyoming.

In the second petition, Father argued that AJW's best interest would be served by awarding him *temporary* custody of AJW during the proceedings. There he added that Mother provided him little notice of the move, and he and Mother were operating under an informal temporary arrangement he felt forced into entering due to Mother's move.

[¶5]   In her answer, Mother admitted that she moved to Idaho for an employment opportunity and to better provide for AJW but denied most of Father's remaining allegations. She counterclaimed to maintain primary physical custody of AJW, with visitation for Father that did not conflict with AJW's future school schedule or extra-curricular activities.

[¶6]   The court heard Father's temporary custody petition in November 2017, noting at the end of the hearing that Mother and Father would have to make sacrifices to maintain consistency in AJW's life. The court rejected Mother's proposal to reduce Father's visitation from twelve to three days a month. In its February 2018 temporary order regarding custody and visitation, the court found the February 2016 custody and visitation schedule unworkable and not in AJW's best interest. It determined that it was in AJW's best interest for Mother to have physical custody of AJW, with "very liberal visitation" to Father, consisting of twelve consecutive days each month, excluding travel days (increasing his visitation by 3%). Mother and Father were to meet in Dillon, Montana, unless they agreed otherwise.

[¶7]   Mother, Father, and Father's ex-wife (the mother of two of AJW's half-siblings) testified at trial in December 2018. Mother and Father stipulated that they are both fit to have custody and control of AJW and that there had been a material change in circumstances that warranted, at a minimum, a change in visitation. In its post-trial interim order, the court determined that the schedule set forth in its February 2018 temporary order was "not in [AJW's] best interest and should be modified to reduce" her travel time. It ordered Mother and Father continue to have joint legal custody of AJW. It determined that it was in AJW's best interest for Mother and Father "to have joint physical custody of [AJW] in alternating four (4) week blocks" beginning on January 12, 2019.

[¶8]   In its decision letter, the court found Mother's relocation constituted a material change in circumstances that warranted reopening the case for a custody and visitation determination. Having found a material change in circumstances, the court then evaluated each of the statutorily enumerated best interest factors related to any modification of custody or visitation. While the court concluded that most factors were neutral, it determined that one weighed in Father's favor and another weighed "slightly" in his favor. None of the factors favored Mother. The court separately addressed Mother's argument that it should consider the fact that she had been AJW's primary caregiver as a substantial

3

factor. The court concluded that Mother's status as AJW's primary caregiver did not warrant much weight because under the stipulated arrangement Father had liberal visitation and cared for AJW over one-third of the time.

[¶9]    The court ordered Mother and Father share custody of AJW until she enters kindergarten. But the court designated Father as AJW's primary physical and residential custodial parent after she enters kindergarten, with liberal visitation to Mother. Mother and Father must alternate holidays based on AJW's school calendar. They must meet in Dillon, Montana at noon on the day after school lets out and then again on the day before school resumes. The court determined that Mother and Father reside too far apart for weekend visitation to be reasonable in Payette, Idaho. It therefore ordered that Mother be allowed one weekend visitation per month, provided visitation occurs within 100 miles of Cody. Father must deliver AJW to a location of Mother's choosing within that distance. Mother and Father are responsible for their own transportation costs with respect to both holiday and weekend visitation.

[¶10]  Mother timely appealed the court's final modification order, which incorporated its decision letter.

### STANDARD OF REVIEW

> We "review orders modifying custody, visitation[,] and child support for an abuse of discretion[.]" *Greer v. Greer*, 2017 WY 35, ¶ 19, 391 P.3d 1127, 1133 (Wyo. 2017) (quoting *Tracy v. Tracy*, 2017 WY 17, ¶ 46, 388 P.3d 1257, 1267 (Wyo. 2017)). Judicial discretion is composed "of many things, among which are conclusions drawn from objective criteria" and "means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily [or] capriciously." *Aragon v. Aragon*, 2005 WY 5, ¶ 7, 104 P.3d 756, 759 (Wyo. 2005). We "will not disturb an order regarding custody or visitation so long as the court could reasonably conclude as it did." *Greer*, 2017 WY 35, ¶ 19, 391 P.3d at 1133. "We evaluate the reasonableness of a decision in relation to the evidence presented, viewing it in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party, and ignoring any conflicting evidence." *Id*. (citations omitted).

*Paden v. Paden*, 2017 WY 118, ¶ 6, 403 P.3d 135, 138 (Wyo. 2017). We do not reweigh the evidence. *Id*. ¶ 13, 403 P.3d at 140 (citation omitted). A court abuses its discretion when it ignores a material factor that deserves significant weight. *See Love v. Love*, 851

P.2d 1283, 1291 (Wyo. 1993) (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo. 1993)).

## DISCUSSION

### I.      *Temporary Custody and Visitation Orders*

[¶11]  Mother argues that the court "failed to balance the needs and rights of the parties and disregarded [AJW's] best interest" when it temporarily modified custody and visitation.  This issue is moot: any ruling we make about the temporary orders would have no impact on Mother and Father now that the court has issued the final order, and none of the exceptions to the mootness doctrine apply.  *See, e.g.*, *In re CRA*, 2016 WY 24, ¶¶ 24–28, 368 P.3d 294, 300–01 (Wyo. 2016).  Mother's argument also ignores our recognition that temporary custody and visitation orders are not subject to the same requirements as final orders.  *See Tracy*, ¶ 34 n.13, 388 P.3d at 1264 n.13 (noting "it is difficult to see how a court could make [complete best interest findings] when the purpose of entering the temporary order is to address a child's best interest for the short period necessary to find time for a full evidentiary hearing and to allow the parties to prepare for it"); *see also DeMers v. Nicks*, 2016 WY 13, ¶ 36, 366 P.3d 977, 986 (Wyo. 2016) ("The Temporary Custody Order was not a final order subject to the modification requirements of Wyo. Stat. Ann. § 20-2-204(c)[.]").  For these reasons, we decline to review the court's temporary and interim rulings.

### II. *Custody Modification*

[¶12]  Mother focuses on the court's best interest determination.  She contends that the court abused its discretion when it granted Father primary physical and residential custody of AJW after AJW enters kindergarten because it did not: (1) explain its reason for interfering with her status as AJW's primary caregiver, (2) consider the impact of sibling separation on AJW, and (3) consider the relocation factors.  The court did not abuse its discretion for any of those reasons.

[¶13]  Mother's first argument—that the court did not explain its reasons for "interfer[ing] with" her primary caregiver status—is belied by the court's best interest analysis.  When the court found that a material change in circumstances warranted reopening custody, it had to determine what, if any, modification was in AJW's best interest.  *Booth v. Booth*, 2019 WY 5, ¶ 21, 432 P.3d 902, 909 (Wyo. 2019).  The court was required to base its decision on the factors set forth in Wyo. Stat. Ann. § 20-2-201(a).[4]  Even though neither

---

[4] The factors are:

> (i) The quality of the relationship each child has with each parent;

party requested W.R.C.P. 52(a) findings, the court heeded our encouragement to place the facts that were crucial to its decision on the record, issuing a thorough decision letter. *TW v. BM*, 2006 WY 68, ¶ 14, 134 P.3d 1262, 1266 (Wyo. 2006); *Fergusson v. Fergusson*, 2002 WY 66, ¶ 15, 45 P.3d 641, 645–46 (Wyo. 2002).

[¶14] Correctly recognizing that "[n]o factor is dispositive [to a child custody determination], but primary caretaker status is often a weighty consideration," *Bruegman v. Bruegman*, 2018 WY 49, ¶ 41, 417 P.3d 157, 170 (Wyo. 2018) (citation omitted), the court determined that Mother's status as AJW's primary caregiver did not warrant as much weight as Mother would have preferred. The court reached this conclusion because Father had liberal visitation with AJW throughout her life and because the court agreed, at least "to some extent," with Father that both Mother and Father had been AJW's primary caregiver when they had custody of AJW. Because the court determined that so many factors were neutral, the two factors that the court found weighed in Father's favor provide insight into why it determined that it was in AJW's best interest to modify custody as it did.

---

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2019).

[¶15]  The court determined that the ability of each parent to provide adequate care for AJW, including arranging for AJW's care, weighed in Father's favor primarily because he has a large support system in Cody.  Father, his mother, his sister, and his wife are all registered nurses, work together, and are very close.  Consequently, AJW is never placed in daycare while in his care.  The court also commended Father's unusual relationship with his ex-wife—who lives across the street, shares custody of their two minor children, and cares for AJW occasionally.  While the court concluded that Mother is also able to arrange adequate care, it noted that she does not have a large support system in Idaho.  She has to arrange for daycare, and her live-in boyfriend picks up AJW and her younger half-brother and watches them on days she works late.  Mother's family lives in Michigan, Texas, Indiana, Washington, and one sister lives in Park County; "her boyfriend's family, who lives nearby in Idaho, is very supportive of her and her children."

[¶16]  The court determined that each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for AJW at specified times and to relinquish care to the other parent at specified times weighed "slightly in favor of Father" for several reasons.  While Father and Mother both took advantage of their time with AJW, the court found no evidence contradicted Father's testimony that he had to fight to get access to AJW from the very beginning.  Mother provided Father two weeks' notice before moving—and that move made his visitation schedule with AJW unworkable.  Father testified that on most occasions, unless written in the court order, Mother had shown unwillingness to be flexible to allow AJW to participate in family birthdays and events.  The record plainly demonstrates that the court did not ignore Mother's primary caregiver status or exercise its judgment on this factor in an arbitrary or capricious way.  *Paden*, ¶ 6, 403 P.3d at 138.

[¶17]  Turning to Mother's second argument, the court did not err by failing to expressly address the effect of separating AJW from her younger half-brother.  We have addressed the importance of considering sibling separation in determining whether to modify custody, *see, e.g.*, *Ianelli v. Camino*, 2019 WY 67, ¶ 30, 444 P.3d 61, 69 (Wyo. 2019), but Mother cannot "be heard to complain" about the absence of formal findings on that issue because neither party requested W.R.C.P. 52(a) findings.  *Resor v. Resor*, 987 P.2d 146, 148 (Wyo. 1999); *Fergusson*, ¶ 15, 45 P.3d at 646 ("We have placed the onus on the parties to request findings of fact and conclusions of law pursuant to W.R.C.P. 52(a).").  In addition, Mother remained passive on the issue of sibling separation throughout the proceedings despite our admonishment that trial counsel "must assist the trial judge in articulating on the record the relevant factors and their relative weight which, in the lawyer's professional judgment, should act as a foundation for the trial court's exercise of judicial discretion." *Paden*, ¶ 19, 403 P.3d at 141 (quoting *Aragon*, ¶ 24, 104 P.3d at 763).  She did not address sibling separation in her answer and counterclaim, at the November 2017 hearing, or at trial.  *Cf. Ianelli*, ¶¶ 31, 37, 444 P.3d at 69, 70 (reversing for consideration of sibling separation because trial counsel explicitly addressed sibling separation in their proposed findings of fact, and the court nevertheless failed to address sibling separation).  By comparison, Father

7

raised the issue of AJW's separation from her half-siblings in Cody and the court's decision letter reflects that the court considered the issue accordingly.

[¶18] Finally, Mother misconstrues the importance of the relocation factors when she asserts that the best interest analysis would have been significantly different had the court considered what she incorrectly characterizes as the "mandatory" relocation factors. The relocation factors are non-exclusive factors that "may inform" the best interest determination when a party seeks modification after a parent's relocation. *Paden*, ¶ 11, 403 P.3d at 139 (citing *Arnott v. Arnott*, 2012 WY 167, ¶ 33, 293 P.3d 440, 455 (Wyo. 2012)). They consider "the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement," the relocating parent's motives for moving, "and whether reasonable visitation is possible for the remaining parent." *Id.* (quoting *Arnott*, ¶ 33, 293 P.3d at 455).

[¶19] Here again, Mother cannot "be heard to complain" about any absence of formal findings on these factors because she and Father did not request W.R.C.P. 52(a) findings. *Resor*, 987 P.2d at 148. Mother also cannot successfully argue that the court ignored these relevant factors. To the contrary, the court's analysis reflects that these factors deserved little weight under the circumstances. *See Love*, 851 P.2d at 1291; *see also Paden*, ¶ 12, 403 P.3d at 140 (citation omitted) (noting a court's failure to explicitly address a factor in its decision letter does not necessarily mean the court did not consider it).

[¶20] No serious question was ever raised regarding the relocation factors. The record reflected that both Mother and Father are good parents and AJW fared well under the original stipulated order. Mother identified her motive for moving to Idaho throughout the proceedings, Father never challenged her motive, and the court expressly recognized Mother's testimony that she moved to Idaho for better employment. It is also apparent from the record that reasonable visitation remained possible for Father as the court could have scheduled the same visitation for him that it ultimately scheduled for Mother. *Cf. Pahl v. Pahl*, 2004 WY 40, ¶ 20, 87 P.3d 1250, 1256 (Wyo. 2004) (upholding the district court's determination that mother's relocation to Germany was not in the best interests of the child where reasonable visitation was cost prohibitive). The court made clear, however, that its most pressing concern was the support network available to AJW in each location and each parent's willingness to put AJW's needs above their own and compromise when it would be in AJW's best interest to do so. In other words, the court reasonably and permissibly gave greater weight to factors other than the relocation factors. *Id.* ¶ 10, 87 P.3d at 1254.

[¶21] For these reasons, we conclude that the court did not abuse its discretion when it determined that it is in AJW's best interest for Father to have primary physical and residential custody of AJW after she enters kindergarten.

### III. Visitation Plan

[¶22] We similarly conclude that the court did not abuse its discretion when it established the visitation plan. Mother failed to preserve her argument regarding the requirement that she and Father meet in Dillon, Montana for holiday visitation and the court's failure to account for the fact that AJW may be able to use alternative modes of transportation when she is older. Mother's arguments regarding holiday visitation, weekend visitation, transportation costs, and reduction in her amount of time with AJW fail on the merits.

#### A. Meeting in Dillon, Montana & Alternative Modes of Transportation

[¶23] "We strongly adhere to the rule forbidding us to consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court, except for those issues which are jurisdictional or are fundamental in nature." *Willis v. Davis*, 2013 WY 44, ¶ 21, 299 P.3d 88, 94 (Wyo. 2013) (quoting *Washington v. State*, 2011 WY 132, ¶ 15, 261 P.3d 717, 721 (Wyo. 2011)). "We follow this rule because it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." *Id.* (quoting *Washington*, ¶ 15, 261 P.3d at 721). "Certainly, determinations of child custody implicate the fundamental right to family association." *Lemus v. Martinez*, 2019 WY 52, ¶ 41, 441 P.3d 831, 840 (Wyo. 2019) (citation omitted). "However, to avoid the waiver rule, the appellant must demonstrate that the district court's actions, if inappropriate, impacted [the appellant's] fundamental rights." *Id.* ¶ 42, 441 P.3d at 840 (footnote omitted). "Not every claimed error in a child custody proceeding can be raised on appeal in the absence of an objection just because child custody involves a fundamental right." *Id.* ¶ 41 n.8, 441 P.3d at 840 n.8 (citations omitted).

[¶24] The record contains no indication that Mother proposed an alternative meeting location despite ample opportunity to do so. The record likewise contains no indication that Mother brought the possibility of alternative modes of transportation to the court's attention. Because neither issue is jurisdictional and Mother presents no argument that either issue impacted her fundamental rights, we decline to consider her arguments for the first time on appeal. *Willis*, ¶ 21, 299 P.3d at 94; *Lemus*, ¶ 41, 441 P.3d at 840.

#### B. Holiday Visitation, Weekend Visitation, Transportation Costs, and Reduction of Mother's Time With AJW

[¶25] Mother's argument regarding holiday visitation stems from the geographic distance between Mother and Father, and the court's decision to schedule those visits around AJW's school schedule. She generally asserts that both her and Father's Thanksgiving holiday will be ruined because they are required to meet in Dillon at noon on Thanksgiving Day (the day after school lets out), and AJW will be forced to undergo another exhausting day of travel to return to Cody in time for school after spending only two days with Mother.

She also notes that the school calendar does not always provide two full weeks for Christmas or a full week for Spring Break, limiting her time with AJW. While all of this may be true, common sense dictates that it was reasonable for the court to schedule holiday visitation around AJW's school schedule to ensure that AJW does not consistently miss school for visitation. *See Richelson v. Richelson*, 130 N.H. 137, 145, 536 A.2d 176, 181 (N.H. 1987) (concluding that "bringing the visitation schedule in line with the child's school schedule, was eminently reasonable and unquestionably in the best interests of the child"); *Nurkin v. Nurkin*, 171 So.3d 561, 564 (¶ 11) (Miss. Ct. App. 2015) (finding the chancellor's ruling was supported by substantial evidence and not manifestly wrong where "[t]he chancellor set a fixed visitation schedule during the summer and one weekend a month during the school year so as to create a predictable routine for Jake and to avoid unnecessary school absences").

[¶26]   Mother cites no authority which prohibited the court from requiring her to exercise her monthly weekend visitation within 100 miles of Cody. She argues that the court erred in imposing this requirement because she must make a round trip of 1,200 or more miles to see AJW for approximately 48 hours, and the requirement does not account for the fact that AJW's younger half-brother would be forced to either accompany Mother or remain behind with an unrelated caregiver. The court's requirement finds support in *Rowan v. Rowan*, where we concluded that the trial court did not abuse its discretion when it established a visitation schedule which, among other provisions, required the children to remain within ten miles of their mother's residence in Nevada, when their father, who resided in Colorado, exercised weekend visitation. *See* 786 P.2d 886, 890–91 (Wyo. 1990).

[¶27]   The court's requirement also implicitly recognizes that it is not in AJW's best interest to travel extensively in a short period of time for weekend visits; *See Martin v. Hart*, 2018 WY 123, ¶ 23, 429 P.3d 56, 64 (Wyo. 2018) (concluding that the "court failed to consider the difficulty the geographic distance between Mother and Father would cause LH" where, regardless of transportation mode, the visitation order would "require LH to spend many hours each month on planes or in cars travelling between Wyoming and Arizona"). Mother's travel time is inverse to AJW's travel time: the more Mother must travel for weekend visitation, the less AJW must travel. The court reasonably placed more of the travel burden on Mother than AJW. *See Arnott*, ¶ 31, 293 P.3d at 454 (noting "the cardinal rule that when the rights of a parent and the rights of a child collide, it is the rights of the parent which must yield"). And while we are sympathetic to the impact that Mother's weekend visitation may have on AJW's younger half-brother, it is AJW's best interest, not her younger brother's, that is at issue in these proceedings.

[¶28]   Mother further asserts that the court abused its discretion (1) when it required her and Father to meet in Dillon because she must travel two more hours than Father and will thus incur a larger portion of expenses for exchanges, and (2) when it required her to exercise weekend visitation within 100 miles of Cody without including any cost sharing requirement. The court had statutory authority to allocate the costs of transporting AJW

under Wyo. Stat. Ann. § 20-2-202(a)(ii) (LexisNexis 2019). Requiring a parent to pay the reasonable and necessary expenses for visitation is within the court's broad discretion with respect to visitation. *Inman v. Williams*, 2009 WY 51, ¶ 17, 205 P.3d 185, 193 (Wyo. 2009) (citing *Durham v. Durham*, 2003 WY 95, ¶¶ 5, 21, 74 P.3d 1230, 1232–33, 1236 (Wyo. 2003)). "There is no immutable standard for the allocation of travel expenses for the purpose of visitation; instead the determination of reasonableness is made on a case-by-case basis." *Id.* ¶ 18, 205 P.3d at 194.

[¶29]  We conclude that it was reasonable for the court to require Mother and Father to pay for their own travel expenses under the circumstances of this case, where the record establishes that Mother voluntarily relocated for better employment thus creating the need for travel. *Cf. Durham*, ¶ 21, 74 P.3d at 1236 (citing *Stanton v. Abbey*, 874 S.W.2d 493, 501 (Mo. App. E.D. 1994)) (noting as a factor in favor of affirming the decision to require Mother to pay for two visits per year "that other courts have approved a decision requiring a parent to share in the expense of a situation that he or she helped to create."). Mother presents no cogent argument or citation to pertinent authority requiring a different result. *Burnett v. Burnett*, 2017 WY 57, ¶ 7, 394 P.3d 480, 482 (Wyo. 2017) (citation omitted) ("We may decline to consider claims unsupported by cogent argument and pertinent legal authority.").

[¶30]  Mother's remaining challenge to the visitation plan on the general basis that it reduces her amount of time with AJW is equally unavailing. Reduction of her amount of time with AJW is the necessary consequence of the court's determination that it is in AJW's best interest for Father to have primary physical and residential custody after AJW enters kindergarten, as well as its decision to schedule visitation around AJW's school schedule, neither of which constituted an abuse of discretion.

[¶31]  Affirmed.